DECISION *Page 2 
{¶ 1} Relator, Dale Carlson ("relator"), filed this action seeking a writ of mandamus directing respondent, the Industrial Commission of Ohio ("respondent" or "the commission"), to vacate its order denying relator's motion seeking an award of temporary total disability ("TTD") compensation effective September 5, 2006, and to enter an order granting TTD compensation.
 {¶ 2} We referred this case to a magistrate of this court pursuant to Loc. R. 12(M) and Civ. R. 53. On May 7, 2008, the magistrate issued a decision denying the writ of mandamus. Relator filed objections, and respondent and the employer, Avon Products, Inc. ("employer"), each filed memoranda opposing the objections. For the reasons that follow, we overrule relator's objections, and adopt the magistrate's decision.
 {¶ 3} Relator suffered a non-work related back injury in 1997, and has experienced chronic back pain from the time of that injury. On December 1, 2003, relator suffered a work-related back injury, with the claim being allowed for lumbar sprain. Relator received TTD compensation until December 14, 2004, based on the allowed claim. At that point, a district hearing officer ("DHO") terminated TTD compensation based on a finding of maximum medical improvement ("MMI"). The DHO relied on a report of an examination performed on October 20, 2004, by Seth Vogelstein, D.O., in which Dr. Vogelstein concluded that the problems relator was experiencing were related to his chronic back problem, that the allowed claim of lumbar sprain had reached MMI, and that relator had indicated that his back pain had returned to its chronic baseline level. *Page 3 
 {¶ 4} Relator filed motions to amend the claim to include as allowed conditions disc protrusion at L5-S1 and aggravation of pre-existing degenerative disc disease at L5-S1. The motions were denied administratively based on a May 11, 2005 report prepared by Thomas A. Bender, M.D., and a September 13, 2004 report prepared by Stephen R. Pledger, M.D. Dr. Pledger's report concluded that relator was suffering from degenerative disc disease, but that this was caused by the chronic back condition, and the December 1, 2003 injury had not aggravated the injury. Dr. Bender's report agreed that relator's degenerative disc disease was a pre-existing condition related to the chronic back injury.
 {¶ 5} Relator appealed the denial of the additional conditions to the Hamilton County Court of Common Pleas. After a trial, relator's claim was amended to include aggravation of pre-existing L5-S1 central disc protrusion and aggravation of degenerative disc disease at L5-S1.
 {¶ 6} Relator subsequently filed a motion seeking TTD compensation for the period from December 15, 2004 through May 5, 2006. Three C-84 forms were submitted by Dr. Pledger on relator's behalf. The first, dated March 30, 2005, certified TTD from December 15, 2004 through December of 2005 based on the allowed condition of lumbar sprain. The second, dated August 24, 2006, certified TTD from 2004 through an actual return-to-work date of May 5, 2006 based on all the allowed conditions. The third, dated December 12, 2006, certified TTD for the same period as the second C-84 form, but was based on only the newly allowed conditions.
 {¶ 7} After a January 23, 2007 hearing, a DHO denied relator's motion for TTD compensation, finding that relator had not met the burden of proof necessary to support *Page 4 
an award of TTD compensation. The DHO found that Dr. Pledger's evidence was inconsistent, based on the September 2004 report in which he concluded that relator's degenerative disc disease was not related to the work injury, and the August 24, 2006 C-84 form in which he concluded that the degenerative disc disease was the basis for an award of TTD compensation. The DHO found that there was no explanation for the differences between the two opinions, and therefore concluded that relator had not met his burden of proof.
 {¶ 8} Relator appealed, and a hearing was held before a staff hearing officer ("SHO") on April 26, 2007. The SHO affirmed the DHO order, including as additional reasoning the inconsistencies between the three C-84 forms offered by Dr. Pledger. Relator then appealed the SHO order, and a hearing was held before a deputy on July 11, 2007. The deputy specifically concluded that there had been no showing of new and changed circumstances warranting an award of TTD compensation, and also concluded that all of the allowed conditions had reached MMI based on the evidence in the record from Drs. Bender and Vogelstein. The commission then denied relator's motion for reconsideration, and relator then filed this action seeking issuance of a writ of mandamus.
 {¶ 9} In her decision denying the writ of mandamus, the magistrate considered the C-84 forms provided by Dr. Pledger, as well as the September 2004 office note, and concluded that the commission did not abuse its discretion in concluding that the inconsistencies and lack of explanation for those inconsistencies were such that the evidence was not sufficient to conclude that relator had established the right to receive TTD compensation for the requested period. The magistrate also considered the reports *Page 5 
of Drs. Bender and Vogelstein, and concluded that the commission did not abuse its discretion in relying on those reports. Finally, the magistrate considered relator's argument that the commission abused its discretion in applying the new and changed circumstances to relator's request for TTD compensation, and concluded that the commission based its decision on the medical evidence presented, and had properly applied the standard that required the commission to consider whether relator had established that the newly allowed conditions rendered him temporarily and totally disabled.
 {¶ 10} Relator filed two objections to the magistrate's decision:
 OBJECTION NO. 1:
 THE MAGISTRATE ERRED BY FINDING THAT DR. PLEDGER'S EVIDENCE WAS INSUFFICIENT TO SUPPORT TEMPORARY TOTAL DISABILITY COMPENSATION.
 OBJECTION NO. 2:
 THE MAGISTRATE ERRED BY FINDING THAT THE OPINIONS OF DRS. BENDER AND VOGELSTEIN WERE "SOME EVIDENCE" TO SUPPORT A MAXIMUM MEDICAL IMPROVEMENT FINDING IN OCTOBER OF 2004.
 {¶ 11} In his first objection, relator argues that the magistrate erred in finding that Dr. Pledger's evidence did not support an award of TTD compensation. In fact, this objection somewhat mischaracterizes the magistrate's decision, as the magistrate's consideration was limited to whether the commission abused its discretion in finding that Dr. Pledger's evidence did not support an award of TTD compensation, and did not involve any weighing of the evidence. *Page 6 
 {¶ 12} Relator argues that the magistrate's decision contains a factual inaccuracy, in that the decision states that Dr. Pledger never explained the conflicting opinions presented in the three C-84 forms he prepared. Relator points to a report dated March 5, 2007, in which Dr. Pledger stated that, while he believed that relator's degenerative disc disease was caused by relator's previous back injury, the 2003 work injury took the degenerative disc disease "to a new level." Relator also argues that the three C-84 forms prepared by Dr. Pledger did not contain internal inconsistencies that prevented them from constituting evidence supporting an award of TTD compensation.
 {¶ 13} Having reviewed the evidence in the record, including the March 5, 2007 report, we cannot say that the commission abused its discretion by concluding that the evidence offered by Dr. Pledger was inconsistent. Inconsistent medical evidence from one physician may not be used as evidence to support an award of workers' compensation. See State ex rel.M. Weingold Co. v. Indus. Comm., 97 Ohio St.3d 44, 2002-Ohio-5353, 776 N.E.2d 69. Because the magistrate did not err in concluding that the commission did not abuse its discretion, relator's first objection to the magistrate's decision is overruled.
 {¶ 14} In his second objection to the magistrate's decision, relator argues that the magistrate erred by concluding that the opinions of Drs. Bender and Vogelstein were some evidence to support the commission's finding that relator's allowed conditions had reached MMI. Relator argues that neither Dr. Bender nor Dr. Vogelstein recognized all of the allowed conditions in the claim in reaching their opinions that relator had reached MMI. *Page 7 
 {¶ 15} As pointed out by the magistrate, Dr. Bender's first report was based on an examination conducted during the period of time for which relator sought TTD compensation, and concluded that relator was not disabled at that time. Dr. Bender prepared a subsequent report after relator's claim had been allowed for the conditions of aggravation of pre-existing L5-S1 central disc protrusion and aggravation of degenerative disc disease at L5-S1, and concluded that the new conditions did not result in relator being disabled during the relevant time period. Relator argues that Dr. Bender's second report did not recognize the newly allowed conditions because the report used the word "exacerbation" rather than "aggravation" in describing the newly allowed conditions. However, it is clear that Dr. Bender's report did recognize the newly allowed conditions, and that use of the word "exacerbation" instead of "aggravation" did not alter the meaning of Dr. Bender's opinion.
 {¶ 16} Relator takes issue with Dr. Vogelstein's report because he argues that the report, while indicating acceptance of the newly allowed conditions, still concludes that the 2003 injury did not result in aggravation of relator's existing back injury. However, as pointed out by the magistrate, in the September 2006 addendum to his report, Dr. Vogelstein, while explaining the reasoning for his conclusion that no aggravation of the existing back injury occurred, specifically stated that his opinion that relator was not disabled was based on the newly allowed conditions, and concluded that if the 2003 injury did result in aggravation of the existing back injury, it was still his opinion that relator was not temporarily and totally disabled as a result of the injury.
 {¶ 17} Thus, the magistrate did not err in concluding that the reports of Drs. Bender and Vogelstein constituted some evidence supporting the commission's *Page 8 
conclusion that relator's conditions had reached MMI. Consequently, relator's second objection to the magistrate's decision is overruled.
 {¶ 18} Having reviewed the evidence in the record, we overrule relator's objections to the magistrate's decision, and adopt that decision as our own. Consequently, relator's request for issuance of a writ of mandamus is denied.
Objections overruled, writ denied.
 PETREE and FRENCH, JJ., concur. *Page 9 
 MAGISTRATE`S DECISION IN MANDAMUS {¶ 19} Relator, Dale Carlson, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's motion for temporary total *Page 10 
disability ("TTD") compensation and ordering the commission to find that he is entitled to that compensation.
Findings of Fact: {¶ 20} 1. Relator sustained a work-related injury on December 1, 2003, and his claim was originally allowed for lumbar sprain.
 {¶ 21} 2. It is undisputed that relator had sustained a previous injury to his back in 1997 and that he experienced chronic back pain with radiation ever since.
 {¶ 22} 3. Relator experienced increased pain following the work-related injury and received a period of TTD compensation.
 {¶ 23} 4. Relator originally treated with Stephen T. Autry, M.D., whose requests to treat relator with lumbar epidural steroid injections were denied.
 {¶ 24} 5. Relator was examined by Seth H. Vogelstein, D.O., on October 20, 2004. In his report, Dr. Vogelstein opined that relator's present complaints and his need for ongoing treatment were related to his chronic problem and that relator's allowed condition of lumbosacral sprain had reached maximum medical improvement ("MMI"). Dr. Vogelstein also indicated that relator said that his lumbar pain had essentially returned to its chronic baseline level.
 {¶ 25} 6. Relator's TTD compensation was terminated following a December 14, 2004 hearing before a district hearing officer ("DHO"). The DHO relied upon the October 20, 2004 report of Dr. Vogelstein and found that relator's lumbar sprain had reached MMI.
 {¶ 26} 7. Thereafter, relator sought to amend his claim to include L5-S1 central disc protrusion by way of aggravation or direct causation and aggravation of pre-existing *Page 11 
degenerative disc disease L5-S1. Relator submitted the December 20, 2003 report of Dr. Autry in support. In that report, Dr. Autry stated as follows:
 Past medical history reveals he suffered an industrial injury to his low back approximately ten years ago when he fell at work into a bench while working on a rotary tiller. He was placed in physical therapy and states that he was off work a few months. He does not feel that he ever completely returned to 100% from his index injury ten years ago, but has remained functional and able to work. * * *
 Physical examination reveals a 48-year-old male who is 6'1", weighing 180-lbs. * * * who appears to be in no acute distress. Clinical examination of the lumbosacral demonstrates right-sided lumbosacral tenderness with SI notch tenderness. He has limited lumbar flexion 45 degrees with pain. * * *
 X-rays taken today of the lumbosacral spine demonstrate L5-S1 degenerative disc disease. No acute bony abnormalities.
 His clinical exam is consistent with an acute lumbosacral strain and aggravation of pre-existing lumbar degenerative disc disease at L5-S1. * * *
 {¶ 27} 8. The commission denied relator's request to allow his claim for additional conditions based upon the May 11, 2005 report of Thomas A. Bender, M.D., and the September 13, 2004 office note wherein Stephen R. Pledger, M.D., had stated:
 * * * The patient does have degenerative disk disease at the L5-S1 level. It is my feeling that the degenerative disk disease started back in 1993 with his back injury. I feel that [t]he injury that he had in December of 2003, has really not aggravated his original condition or made it worse. He has had some minor aggravation of that degenerative disk, but it appears to be improving.
 Epidural blocks at this time, I do not feel, will assist him with his back pain. I believe that the degenerative disk disease is the main cause of his symptoms. I feel a discogram may be of some benefit to determine if the degenerative disk is the *Page 12 
source of his problem and if it is, a lumbar spine fusion using lumbar Taper cages with BMP would be the operative procedure of choice. I will let Dr. Autry determine what needs to be done next.
 {¶ 28} The commission also relied on the May 11, 2005 report of Dr. Bender, who stated:
 * * * The patient injured himself on March 1, 1993 [sic]. He was off work approximately five weeks. He was back to work in a light duty position after five weeks. Thereafter he returned as a mechanic techician [sic] without restrictions on 4/28/03. The patient states that the pain never went away. In approximately 1997 he began to develop right leg weakness. He had a foot drop. The patient states that the pain and right leg symptoms persisted. * * *
 The patient states that he has experienced back pain on a chronic basis. He has right leg pain on a chronic basis. He had both of these symptoms prior to the event of 12/1/03.
 * * *
 * * * He has an MRI scan which verifies one level of disc pathology to account for his symptoms of chronic back and radiating right leg pain since 1997. This would be the L5-S1 disc space which was recognized on the MRI scan of 1/10/04. Therefore, it is my opinion that the patient had a protruding disc at L5-S1 prior to the time of 12/1/03. I do not believe that the event of 12/1/03 caused or aggravated the disc protrusion at L5-S1 due to the fact that the patient had comparable back and right leg symptoms before and after the event of 12/1/03. Considering the chronicity of the patient's back complaints, it is my opinion the patient has degenerative disc disease which pre-existed the event of 12/1/03. I base this upon the fact the patient had back and radiating right leg pain for a period of nearly at least six years prior to the event of 12/1/03. *Page 13 
 * * *
 * * * The patient does not require further management for the currently allowed condition of "lumbar strain/sprain."
 {¶ 29} 9. Ultimately, following an appeal to the Hamilton County Court of Common Pleas, relator's claim was additionally allowed for "aggravation of pre-existing L5-S1 central disc protrusion and aggravation of degenerative disc disease of the lumbar spine at L5-S1."
 {¶ 30} 10. Thereafter, relator requested TTD compensation from December 15, 2004 through May 5, 2006.
 {¶ 31} 11. Relator's treating physician, Dr. Pledger, completed three C-84s. The first is dated March 30, 2005, and certifies a period of TTD from December 15, 2004 through December 2005, based solely upon the condition of lumbar sprain. Dr. Pledger also completed a C-84 dated August 24, 2006, certifying a period of TTD from 2004 through an actual return-to-work date of May 5, 2006. This C-84 was based upon all the allowed conditions. Thereafter, on December 12, 2006, Dr. Pledger re-submitted the August 2006 C-84 certifying TTD from 2004 to an actual return-to-work date of May 5, 2006, listing only the newly allowed conditions of aggravation of pre-existing L5-S1 central disc protrusion and aggravation of degenerative disc disease of the lumbar spine at L5-S1.
 {¶ 32} 12. Relator's motion was heard before a DHO on January 23, 2007 and was denied. The DHO determined that relator had failed to meet his burden of proving that the allowed conditions in the claim prevented him from returning to his former position of employment from December 15, 2004 through May 5, 2006. The DHO noted that Dr. Pledger had submitted inconsistent C-84s: *Page 14 
 In September of 2004, the Injured Worker changed his physician of record from Dr. Autry to Dr. Pledger. In his report dated 09/13/2004, Dr. Pledger indicates that he feels that the injury the Injured Worker sustained in December of 2003 did not really aggravate the Injured Worker's original back condition nor made it worse. Despite this, he submitted a C-84 dated 08/24/2006 finding that the degenerative disc disease prevented the Injured Worker from returning to his former position of employment. The District Hearing Officer finds these two statements to be inconsistent. The District Hearing Officer notes that there is no evidence on file to explain why Dr. Pledger changed his opinion, with regards to the allowed condition of degenerative disc disease and its effect on the Injured Worker. Thus, the Injured Worker failed to meet his burden of proof.
 * * *
 This decision is based on the 09/13/2004 report from Dr. Pledger and the 08/24/2006 C-84 from Dr. Pledger.
 {¶ 33} 13. Relator appealed and the matter was heard before a staff hearing officer ("SHO") on April 26, 2007. The SHO affirmed the prior DHO order and added additional reasoning. After laying out the history of relator's claim and the medical evidence in the record, the SHO stated:
 The Hearing Officer finds that the three submitted/amended C-84s dated 08/24/2006 are not medical evidence which can be relied upon by the Hearing Officer to award payment of temporary total disability compensation. The Hearing Officer finds that the C-84s merely change the diagnosed conditions on the face of the C-84 but rely upon the same examination date of 07/27/2006. The Hearing Officer finds the inconsistencies in the C-84s generated by the same examination date are not competent to support an award of temporary total disability compensation. The Hearing Officer relies on the case of State ex rel. M. Weingold Co. v. Indus. Comm. (2002) 97 Ohio St. 3d 44.
 The Hearing Officer finds that the opinion of Dr. Pledger per C-84s that the injured worker was unable to return to and perform the duties of his former position of employment for *Page 15 
the period requested based upon the allowance of the additional condition of aggravation of pre-existing degenerative disc disease at L5-S1 as stated in the C-84s is inconsistent with his previous opinion outlined in his office note of 09/13/2004 which opined that the degenerative disease at L5-S1 was not aggravated or made worse by the 12/01/2003 industrial injury. The Hearing Officer finds that Dr. Pledger does not explain this inconsistency in his office notes or in the most recent report submitted dated 03/05/2007.
 The employer's represented [sic] submitted the 09/26/2005 report of Dr. Bender who indicated that the injured worker had reached maximum medical improvement for aggravation of pre-existing degenerative disc disease at L5-S1 and aggravation of pre-existing degenerative disc protrusion at L5-S1 effective 10/20/2004. Dr. Bender opined that the injured worker had returned to pre-injury baseline status as of October 2004 and any alleged subsequent disability was related to non-allowed natural deterioration of the underlined degenerative conditions.
 The Hearing Officer finds based on the foregoing reasoning that the injured worker has not provided sufficient proof to support the payment of temporary total disability compensation for the period of 12/15/2004 through 05/05/2006 and therefore payment of temporary total disability compensation for this period is denied.
 {¶ 34} 14. Relator appealed and the matter was heard before a deputy on July 11, 2007. The deputy affirmed the prior SHO order and provided the following analysis:
 It is the finding of the Deputy that the injured worker has not shown sufficient new and changed circumstances to warrant the further payment of temporary total compensation.
 It is the further finding of the deputy that the additionally allowed conditions had reached maximum medical improvement as of the date of Dr. Vogelstein's report of 10/20/2004.
 * * * Dr. Autry, concluded on 2/09/2004 that the injured worker suffered recurrent disc pathology at L5-S1. A C-9 of *Page 16 
2/09/2004 requesting physical therapy was granted by the MCO, and the treatment was performed. A 2/20/2004 C-9 for epidural injections was denied by the MCO on the basis that it was directed at conditions not allowed in the claim. * * *
 On 9/14/2004 Dr. Pledger saw the injured worker in consultation. He diagnosed degenerative disc disease at L5-S1 and recommended a discogram to confirm the diagnosis. At this time he indicated that epidural blocks would not assist the injured worker's pain. On 9/23/2004 the injured worker's care was transferred to Dr. Pledger.
 On 10/20/2004 Dr. Vogelstein examined the injured worker on behalf of the employer. He concluded that the allowed sprain had reached maximum medical improvement and any ongoing problems are due to pre-existing non-allowed conditions. * * *
 On 2/28/2005 a Discogram and CT scan were done, which Dr. Pledger (3/05/2007) indicates were done to confirm the diagnosis of degenerative disc disease. Dr. Pledger saw the injured worker again on 3/17/2005, 5/12/2005, 8/24/2005, 9/28/2005, 11/16/2005, and 7/15/2006. Over this entire period treatment was conservative, consisting only of office visits and medication, and the file reflects no requests for epidural steroid injections or any other form of alternative treatment.
 * * * The injured worker argues that the newly allowed conditions * * * amount to a showing of new and changed circumstances because they show a temporary worsening of the allowed conditions.
 * * * [A]n additional allowance of a new condition is not in-and-of-itself proof of new and changed circumstances warranting further temporary total disability compensation. There must also be a showing of some real change in the physical condition and/or treatment. Further, Frisch's Restaurants, Inc. v. I.C. (2004), 102 Ohio St.3d 292, and Robert Cottrell v. American National Red Cross (8-15-06), 10th
Ct. App., No. 95APD08-974, held that treatment that is only palliative and won't improve functioning is consistent with a finding of maximum medical improvement. *Page 17 
 In the present case, it is clear from the 1/10/2004 MRI report, the 2/09/2004 treatment record from Dr. Autry, and the 9/13/2004 consultation report from Dr. Pledger, that the treating physicians were aware by no later than 9/13/2004 what was causing the injured worker's symptoms. Since at least 9/13/2004, the only treatment that has been requested and received is office visits and medication, palliative treatment. Physical therapy had already been done before the finding of maximum medical improvement and the claim file reflects no further requests for physical therapy. While epidural steroids were requested on 2/20/2004, apparently for the disc condition, Dr. Pledger indicated on 9/13/2004 that this form of treatment was no longer warranted. While discogram and CT scan testing were performed on 2/28/2005, these were diagnostic tests done only to confirm the diagnoses, which they did. Despite the additional allowance of the aggravation of the pre-existing L5-S1 disc protrusion and degenerative disc disease, there has been no new treatment requested specifically to treat these newly allowed conditions and there has been no change in the treatment since the finding of maximum medical improvement.
 Based on the lack of any requests for treatment specifically for the newly allowed conditions, and the lack of any treatment other than palliative office visits and medication since the previous finding of maximum medical improvement, the Deputy finds that the injured worker has not shown a sufficient worsening of his condition to warrant further temporary total disability compensation.
 Further, the lack of any change in the treatment is also found to support the 9/25/2006 reports from doctors Bender and Vogelstein, both of whom opine that the additionally allowed conditions had reached maximum medical improvement as of the 10/20/2004 examination by Dr. Vogelstein. While both doctors do not agree with the aggravation, both accept the additional allowances and reviewed the prior medical records. Therefore, the reports are found to be legally sufficient pursuant to Gregg v. I.C. (2000) 88 Ohio St.3d 405 and Dobbins v. I.C. (2006), 109 Ohio St.3d 235.
 {¶ 35} 15. Relator's request for reconsideration was denied by order of the commission mailed October 27, 2007. *Page 18 
 {¶ 36} 16. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 37} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 38} Relator makes three arguments: (1) the commission abused its discretion by relying upon the reports of Drs. Vogelstein and Bender; (2) the commission abused its discretion by applying the new and changed circumstances test; and (3) the commission abused its discretion by failing to consider relator's worsening condition as a new and changed circumstance sufficient to warrant payment of additional TTD compensation.
 {¶ 39} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a *Page 19 
claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of claimant is made available by the employer or another employer; or (4) claimant has reached MMI. See R.C. 4123.56(A); State ex rel. Ramirez v. Indus.Comm. (1982), 69 Ohio St.2d 630.
 {¶ 40} It is undisputed that a claimant may receive additional TTD compensation after TTD compensation has been terminated based upon a finding of MMI where the claimant shows that the temporary worsening or exacerbation of their condition constitutes new and changed circumstances. State ex rel. Bing v. Indus. Comm. (1991),61 Ohio St.3d 424. The granting of additional conditions may warrant the payment of a new period of TTD compensation; however, that is not always the case. As this court stated in State ex rel. Wyrebaugh v. Indus. Comm., Franklin App. No. 06AP-610, 2007-Ohio-1939, at ¶ 32:
 * * * The commission's granting of an additional claim allowance after a finding of MMI may be cause for resuming TTD compensation if the new claim allowance is not at MMI and the other requirements for TTD compensation are met. See State ex rel. Basye v. Indus. Comm. (1992), 64 Ohio St.3d 68. However, the granting of an additional claim allowance after a finding of MMI does not automatically resume the payment of TTD compensation. State ex rel. Vance v. Marikis
(1999), 86 Ohio St.3d 305.
 {¶ 41} Relator's challenges to the commission's order are interrelated and will be addressed together.
 {¶ 42} In denying the requested period of TTD compensation, the commission essentially made two findings: relator did not meet his burden of proving that the newly allowed conditions rendered him temporarily and totally disabled, and the record *Page 20 
contains medical evidence indicating that all of his back conditions were previously at MMI.
 {¶ 43} In finding that relator failed to meet his burden of proof, the commission stated that his evidence was insufficient to warrant the payment of a new period of TTD compensation. The commission referred to Dr. Pledger's three C-84s and noted both that the C-84s were inconsistent and that Dr. Pledger never explained the inconsistencies. Although relator asserts that his C-84s do establish his entitlement to TTD compensation, he cannot escape the inconsistencies. Specifically, the March 2005 C-84 seeking TTD compensation from December 14, 2004 to December 2005 listed only the lumbar sprain and did not mention the new conditions. Relator's lumbar sprain had reached MMI as of December 14, 2004. Thereafter, on August 24, 2006, Dr. Pledger certified TTD compensation from 2004 until May 5, 2006 based upon all of the allowed conditions; however, Dr. Pledger did not provide any objective findings and did not explain his statement that relator had actually returned to work on May 5, 2006. Thereafter, Dr. Pledger's December 12, 2006 C-84 actually appears to be the exact same C-84 submitted in August 2006 with the condition of lumbar sprain whited out. The commission did not abuse its discretion in citing the inconsistencies in Dr. Pledger's C-84s as a failure to submit sufficient evidence.
 {¶ 44} Further, the commission referred to the September 13, 2004 office note wherein Dr. Pledger stated that the December 2003 injury had not really aggravated his original condition and that the steroid epidural injections which had been requested by Dr. Autry were no longer warranted. That evidence is in the record and Dr. Pledger never explained why he made that statement or why he later did not agree with his *Page 21 
previously made statement. Further, the commission noted a lack of anything but conservative treatment. These factors support the commission's determination that the evidence was insufficient.
 {¶ 45} After finding that relator did not meet his burden of proof, the commission also cited the reports of Drs. Vogelstein and Bender. In his October 2002 report, Dr. Vogelstein noted that relator's condition was chronic and that relator himself had indicated that his condition had, at that time, returned to baseline. Dr. Bender had examined relator in April 2005 and issued an additional report in May 2006 wherein he indicated that, in his opinion relator had the protruded disc before the December 2003 injury and noted that relator had chronic pain with radiation since 1997.
 {¶ 46} Relator cites State ex rel. Bowie v. Greater Cleveland RegionalTransit Auth. (1996), 75 Ohio St.3d 458, wherein the Supreme Court of Ohio granted a writ of mandamus after finding that the report of Dr. Katz, prepared after the claimed period of disability had ended, did not constitute some evidence upon which the commission could rely. In that case, the claimant had asserted that a report which post-dates the period of disability can never constitute "some evidence" upon which the commission could rely. Although the court granted the writ of mandamus in that case, the court specifically disagreed with the claimant's assertion.
 {¶ 47} Specifically, the court stated, at 460:
 There are parallels between an examining doctor who offers a retroactive opinion and a doctor who renders an opinion as to a claimant's current status without examination. The evidentiary acceptability of the latter is long-settled, having been equated to an expert's response to a hypothetical question. State ex rel. Wallace v. Indus. Comm. (1979), 57 Ohio St.2d 55 * * *; State ex rel. Hughes v. Goodyear Tire *Page 22 Rubber Co. (1986), 26 Ohio St.3d 71 * * *; State ex rel. Lampkins v. Dayton Malleable, Inc. (1989), 45 Ohio St.3d 14[.] * * *
 As in the case of a non-examining physician, however, certain safeguards must apply when dealing with a report that is not based on an examination done contemporaneously with the claimed period of disability. We find it imperative, for example, that the doctor review all of the relevant medical evidence generated prior to that time. * * *
 {¶ 48} In the present case, Dr. Bender had examined relator in April 2005. That date is within the period for which relator sought TTD compensation. Further, Dr. Bender noted the medical evidence which he reviewed. Based upon the medical evidence which he reviewed, his examination of relator, and the history he took from relator, Dr. Bender opined that relator was not temporarily and totally disabled. Although he also opined in his May 11, 2005 report that the December 2003 injury did not aggravate relator's back condition, he authored another report dated September 25, 2006, after reviewing additional medical evidence, including the deposition testimony of Dr. Autry. In this report, he indicated that he agreed with Dr. Autry's conclusion that relator did suffer an exacerbation of his pre-existing degenerative disc disease at L5-S1 and disc protrusion at L5-S1, yet still opined that those new conditions had not rendered relator temporarily and totally disabled during that time period. As such, Dr. Bender examined relator during the requested period of compensation and authored an additional report after the new conditions were allowed and still opined that none of the allowed conditions disabled him during that time period. Dr. Bender's report does constitute some evidence upon which the commission could rely. *Page 23 
 {¶ 49} Dr. Vogelstein examined relator in October 2004, immediately preceding the claimed period of disability. Dr. Vogelstein specifically indicated the medical evidence which he reviewed, provided his findings, and opined that the originally allowed condition of lumbar sprain did not render relator disabled during that time period. In that report, Dr. Vogelstein specifically noted that relator himself had indicated that his pain had returned to its baseline level. Although Dr. Vogelstein did examine relator before the new conditions were allowed and did not consider those new conditions in rendering his opinion, he did author an addendum in September 2006. It is true that, in that addendum, Dr. Vogelstein did opine that the December 2003 injury did not aggravate relator's degenerative disc and disc protrusion problem; however, he went on to explain his reasoning. Specifically, his review of all the evidence submitted by Dr. Autry led him to believe that Dr. Autry had not been aware that relator had been having chronic low back pain from December 1993 through 2003 and that relator had complained about the same type of pain following the December 2003 injury. However, Dr. Vogelstein went on to state that even if the December 2003 injury caused the aggravations, it was still his opinion that relator was not temporarily and totally disabled during that time frame. Also, the deputy's order of July 11, 2007 specifically cites the newer reports of both Drs. Bender and Vogelstein; therefore, it is apparent that the commission did not simply rely on the earlier reports.
 {¶ 50} Although relator contends that the commission abused its discretion by applying the new and changed circumstances standard, relator needed to submit sufficient competent credible evidence establishing that the newly allowed conditions rendered him temporarily and totally disabled following the determination that he had *Page 24 
reached MMI for his originally allowed condition. Contrary to relator's assertion, the commission did not simply find that he failed to demonstrate new and changed circumstances; the commission found that the evidence he submitted was insufficient to establish entitlement to the new period of TTD compensation. In the present case, the commission found relator's evidence to be insufficient and inconsistent and determined that it did not constitute "some evidence" supporting the period of compensation. The magistrate finds that the commission did not abuse its discretion.
 {¶ 51} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in denying him TTD compensation and this court should deny relator's request for a writ of mandamus. *Page 1