[Cite as *State ex rel. Burns v. Indus. Comm.*, 2020-Ohio-588.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Dana W. Burns, | : | |
| Relator, | : | |
| v. | : | No. 18AP-785 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

D E C I S I O N

Rendered on February 20, 2020

**On brief:** *The Bainbridge Firm, LLC,* and *Casaundra L. Johnson,* for relator.

**On brief:** *Dave Yost,* Attorney General, and *Jacquelyn McTigue,* for respondent Industrial Commission of Ohio.

**On brief:** *Zach Klein,* City Attorney, and *Richard N. Coglianese,* for respondent City of Columbus.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

LUPER SCHUSTER, J.

{¶ 1} Relator, Dana W. Burns, initiated this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order which denied his request for temporary total disability ("TTD") compensation, and to find that he is entitled to that compensation.

{¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate issued the appended decision, including findings of fact and conclusions of law. The magistrate

determined that Burns has not demonstrated the commission abused its discretion in denying his request for TTD compensation. Thus, the magistrate recommends this court deny Burns' request for a writ of mandamus.

{¶ 3} Burns has filed objections to the magistrate's decision. First, Burns argues the magistrate erred in rejecting his argument that the report of Michael Murphy, Ph.D., was not "some evidence" because Dr. Murphy did not review all of the relevant medical evidence generated prior to his psychological examination of Burns. Second, Burns contends the magistrate erred in finding the commission did not abuse its discretion in denying the requested TTD compensation on the basis that Burns had not demonstrated new and changed circumstances. We address these objections together because they raise interrelated issues.

{¶ 4} For this court to issue the requested writ of mandamus, Burns must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). But when the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). The commission "has substantial leeway in both interpreting and drawing inferences from the evidence before it." *State ex rel. Lawson v. Mondie Forge*, 104 Ohio St.3d 39, 2004-Ohio-6086, ¶ 34. Thus, we must not "second-guess the commission's evaluation of the evidence." *State ex rel. Black v. Indus. Comm.*, 137 Ohio St.3d 75, 2013-Ohio-4550, ¶ 22. Moreover, this court must defer to the commission's expertise in evaluating disability. *State ex rel. Pass v. C.S.T. Extraction Co.*, 74 Ohio St.3d 373, 376 (1996).

{¶ 5} As set forth above, this matter centers on the commission's denial of Burns' request for TTD compensation. TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. *State ex rel. Schumacher v. Auto Sys. Ctrs., Inc.,* 10th Dist. No. 16AP-535, 2017-Ohio-5523, ¶ 23. *See State ex rel. Ritzie v. Reece-Campbell, Inc.*,

146 Ohio St.3d 259, 2015-Ohio-5224, ¶ 11 ("To qualify for temporary-total-disability compensation, a claimant must demonstrate that he or she is medically unable to work as a result of the allowed conditions of the claim."). The claimant carries the burden of showing that an allowed condition caused the disability. *Id.* at ¶ 16; *State ex rel. Bravo Brio Restaurant Group, Inc. v. Indus. Comm.*, 10th Dist. No. 17AP-189, 2018-Ohio-2735. When awarded, TTD compensation must be paid to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of claimant is made available by the employer or another employer; or (4) claimant has reached maximum medical improvement ("MMI"). *See* R.C. 4123.56(A); *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982).

{¶ 6} MMI is "a treatment plateau (static or well-stabilized) at which no fundamental functional or physiological change can be expected within reasonable medical probability in spite of continuing medical or rehabilitative procedures. An injured worker may need supportive treatment to maintain this level of function." Ohio Adm.Code 4121-3-32(A)(1). If a claimant reaches MMI as to a disabling condition that was the basis for TTD compensation (resulting in the termination of TTD compensation), he subsequently may seek an additional period of TTD compensation based on a newly allowed condition. *Ritzie* at ¶ 16. "The commission's granting of an additional claim allowance after a finding of MMI may be cause for resuming TTD compensation if the new claim allowance is not at MMI and the other requirements for TTD compensation are met." *State ex rel. Wyrebaugh v. Indus. Comm.*, 10th Dist. No. 06AP-610, 2007-Ohio-1939, ¶ 32. The allowance of a new condition after MMI termination of TTD compensation has been characterized as a new and changed circumstance. *Wyrebaugh* at ¶ 37. However, such a circumstance "does not automatically resume the payment of TTD compensation." *Id.* at ¶ 32; *see Ritzie* at ¶ 16 (the addition of a newly allowed condition "does not necessarily guarantee the payment of a new period of temporary-total-disability compensation"). The burden remains on the claimant to establish that the newly allowed condition renders claimant temporarily and totally disabled. *Wyrebaugh* at ¶ 37.

{¶ 7} In this matter, Burns was awarded TTD compensation beginning June 23, 2014, due to his allowed psychological condition of anxiety disorder. Following a hearing

before a district hearing officer ("DHO") on May 12, 2016, Burns' TTD compensation was terminated based on the DHO's finding that the anxiety disorder had reached MMI. In June 2017, a DHO allowed Burns' claim for unspecified depressive disorder. Soon thereafter, Burns requested the payment of TTD compensation from May 15, 2016 onward, based on the newly allowed psychological condition. In support of this request, Burns submitted mental health treatment records of Scott Donaldson, Ph.D., which included summaries wherein he repeatedly noted Burns' anxiety and depression symptoms and opined that "it is unrealistic to presume that Mr. Burns is able to return to any form of gainful employment." (Stipulation of Evidence at 20972-R95.) In view of this TTD compensation request, Burns was referred to Dr. Murphy for an independent forensic psychological report. Based on his review of the medical records before him and his examination of Burns on August 25, 2017, Dr. Murphy "found no new objective evidence to warrant a new period" of TTD compensation, noting in particular that Burns had never been prescribed a psychotropic medication. (Stipulation of Evidence at 20972-R76.) Dr. Murphy also opined that Burns had reached MMI for the newly allowed psychological condition as of the date of the examination on August 25, 2017.

{¶ 8} The commission denied Burns' request for TTD compensation due to the unspecified depressive disorder, relying in part on Dr. Murphy's report. Burns argues the commission could not rely on Dr. Murphy's report because he did not review all of the relevant medical evidence generated prior to his examination of Burns. A doctor who offers an opinion "as to the claimant's extent of disability that is retrospective of the date of his examination is treated as a non-examining doctor as to his retrospective opinion. Under such scenario, the doctor must observe certain safeguards if his retrospective opinion is to be accepted as evidence in a commission proceeding." *State ex rel. Staples the Office Superstore E., Inc. v. Indus. Comm.*, 10th Dist. No. 12AP-879, 2013-Ohio-4339; *see State ex rel. Foor v. Rockwell Internatl.*, 78 Ohio St.3d 396, 399 (1997) ("[A] doctor cannot offer an opinion on a claimant's extent of disability for a period that preceded the doctor's examination of the claimant" unless certain safeguards exist.). "Before a doctor issues a report that is not based on an examination performed contemporaneously with the claimed period of disability, the doctor must review all the relevant medical evidence generated prior to the examination." *State ex rel. Roxbury v. Indus. Comm.*, 138 Ohio St.3d 91, 2014-

Ohio-84, ¶ 15, citing *State ex rel. Bowie v. Greater Cleveland Regional Transit Auth.*, 75 Ohio St.3d 458, 460 (1996). "If the doctor failed to do so, the doctor's opinion is not evidence upon which the commission may rely." *Id.*, citing *Bowie.*

{¶ 9}   Burns asserts Dr. Murphy's report cannot constitute some evidence because Dr. Murphy did not review all of Dr. Donaldson's treatment notes completed during the requested period of disability, or the April 25, 2017 report of Richard Odor, Ph.D., on which the commission relied to additionally allow the claim for the unspecified depressive disorder. We agree that Dr. Murphy did not indicate in his report that he reviewed all of Dr. Donaldson's treatment notes or Dr. Odor's report, and that these medical records were relevant medical evidence pertaining to Burns' newly allowed psychological condition. However, we find that any opinion reached by Dr. Murphy in regard to whether Burns was temporarily and totally disabled during the time period preceding his examination of Burns was not relied upon by the commission to find Burns failed to prove his entitlement to TTD compensation due to the allowed unspecified depressive disorder condition.

{¶ 10}  As to whether Burns was temporarily and totally disabled due to the newly allowed condition of unspecified depressive disorder, the commission concluded that Burns failed to meet his burden of proving this disability by a preponderance of the evidence. We agree with the magistrate that the commission did not abuse its discretion in reaching this conclusion and consequently denying Burns' request for TTD compensation on the basis of his newly allowed condition. In response to Burns' assertion that he was independently disabled by the newly allowed unspecified depressive disorder, the commission noted that his treatment regime with Dr. Donaldson remained relatively consistent despite the additional allowance. The commission also noted that no psychotropic medications were prescribed before or after the additional allowance. Lastly, the commission, citing Dr. Murphy's report, found no evidence that Burns' activities of daily living had been impaired as a result of the newly allowed psychological condition. In support of this finding, the commission referenced some of Burns' many daily activities he self-reported to Dr. Murphy: "Dr. Murphy documents the Injured Worker prepares family meals, does laundry, cares for two horses and seven cats, helps his children with homework (including math and science), does grocery shopping, cares for his personal basic needs, and handles his family's finances." (Stipulation of Evidence at 20972-T51.) This evidence

constituted some evidence on which the commission could rely to deny the requested TTD compensation.[1]

{¶ 11} Thus, in finding that Burns was not temporarily and totally disabled as a result of the newly allowed psychological condition, the commission did not indicate that it based this conclusion on any opinion reached by Dr. Murphy. Instead, the commission, while also citing Burns' treatment regime and the absence of any prescribed psychotropic medications, referenced the facts documented in Dr. Murphy's report pertaining to the extent of Burns' daily activities. Although the commission, in also concluding that Burns' newly allowed psychological condition had reached MMI, did rely on Dr. Murphy's opinion that this condition had reached MMI as of the date of the examination, that additional conclusion was ultimately inconsequential to the commission's denial of Burns' request for TTD compensation. A claimant who is not temporarily and totally disabled due to an allowed condition is not entitled to TTD compensation regardless of an MMI finding.

{¶ 12} Following our independent review of the record pursuant to Civ.R. 53, we find the magistrate correctly determined that Burns is not entitled to the requested writ of mandamus. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law, as modified and clarified herein. We therefore overrule Burns' objections to the magistrate's decision and deny his request for a writ of mandamus.

*Objections overruled;*
*writ of mandamus denied.*

DORRIAN and BRUNNER, JJ., concur.

Brunner, J., concurring.

{¶ 13} I concur with the majority decision in adopting the magistrate's decision, but I write separately to reject as some evidence that the commission "also noted that no psychotropic medications were prescribed before or after the additional allowance."

---

[1] The magistrate concluded that the commission's findings as to the frequency of Burns' visits with Dr. Donaldson and the absence of prescribed psychotropic medications by themselves were a valid basis for the commission to deny the requested TTD compensation. We find it unnecessary to reach this conclusion in view of the commission's additional reference to Burns' ability to perform a vast array of daily activities as documented in Dr. Murphy's report.

(Majority Decision at ¶ 10.) Relator's newly allowed condition for "unspecified depressive disorder" is defined in the October 2018 update to the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition, known as the DSM-5, as:

> **Unspecified Depressive Disorder** [October 2018] *(DSM-5, p. 184; Desk Reference, p. 107)*
>
> As printed: This category applies to presentations in which symptoms characteristic of a depressive disorder that cause clinically significant distress or impairment in social, occupational, or other important areas of functioning predominate but do not meet the full criteria for any of the disorders in the depressive disorders diagnostic class.
>
> As updated: This category applies to presentations in which symptoms characteristic of a depressive disorder that cause clinically significant distress or impairment in social, occupational, or other important areas of functioning predominate but do not meet the full criteria for any of the disorders in the depressive disorders diagnostic class, <u>and do not meet criteria for adjustment disorder with depressed mood or adjustment disorder with mixed anxiety and depressed mood.</u>

(Emphasis sic.) American Psychiatric Association, *Supplement to Diagnostic and Statistical Manual of Mental Disorders*, at 14 (5th Ed.2018) https://dsm.psychiatryonline.org/pb-assets/dsm/update/DSM5Update_October2018 .pdf (accessed Feb. 6, 2020).

{¶ 14} Nothing in the DSM-5 speaks to whether psychotropic medication is indicated for unspecified depressive disorder. The Merck Manual Professional Version, which does address treatment for the condition, notes that physical disorders must be excluded as a cause of depressive symptoms and that laboratory testing is necessary to exclude physical conditions that can cause depression. Tests include CBC, TSH levels, and routine electrolyte, vitamin $B_{12}$, and folate levels. Generally, the Merck manual lists "support, therapy and drugs" as types of treatment for depressive disorders. *See* https://www.merckmanuals.com/professional/psychiatric-disorders/mood-disorders/ depressive-disorders #v1028065 (accessed Feb. 6, 2020).

{¶ 15} In short, "some evidence" is essentially "evidence," which is treated in the preamble to the Ohio Rules of Evidence 102 as relating "to the end that the truth may be ascertained and proceedings justly determined." Accordingly, I would not adopt a predisposition that an allowed condition for workers' compensation of unspecified depressive order is supported nor defeated as compensable by whether psychotropic medication is prescribed. As such, it does not comprise "some evidence" according to our specified standard of review.

> With respect to the standard of proof required to support an order of the Industrial Commission regarding an extent of disability question, it is beyond dispute that the "some evidence" rule is the appropriate standard to be applied by this court in a mandamus proceeding. *State, ex rel. Lewis, v. Diamond Foundry Co.* (1987), 29 Ohio St. 3d 56, 57-58. *See, also, State, ex rel. Johnson, v. Indus. Comm.* (1983), 11 Ohio App. 3d 22. Regardless of the degree of proof a claimant must meet in an administrative proceeding before the Industrial Commission, the standard of review that this court must apply in an original action in mandamus which seeks to alter a commission order is the "some evidence" standard.

*State ex rel. PPG Industries, Inc. v. Indus. Comm.*, 10th Dist. No. 87AP-1125, 1989 WL 68272, 1989 Ohio App. LEXIS 2488, *3-4 (June 20, 1989).

{¶ 16} With this exception, in all other respects I concur in the decision of the majority.

## **APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Dana W. Burns, | : | |
| Relator, | : | |
| v. | : | No. 18AP-785 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

### M A G I S T R A T E ' S   D E C I S I O N

Rendered on August 29, 2019

*The Bainbridge Firm, LLC,* and *Casaundra L. Johnson,* for relator.

*Dave Yost,* Attorney General, and *Jacquelyn McTigue,* for respondent Industrial Commission of Ohio.

*Zach Klein,* City Attorney, and *Richard N. Coglianese,* for respondent City of Columbus.

### IN MANDAMUS

{¶ 17} Relator, Dana W. Burns, has filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied his request for temporary total disability ("TTD") compensation, and ordering the commission to find that he is entitled to that compensation.

Findings of Fact:

{¶ 18} 1. Relator sustained a work-related injury on November 20, 1991 while working as a new recruit for the City of Columbus Police Academy. During a wrestling training exercise, relator was flipped and landed on top of his head from a distance of approximately five feet. His workers' compensation claim was originally allowed for the following conditions: "head concussion; cervical sprain/strain; reflex sympathetic dystrophy."

{¶ 19} 2. Relator received TTD compensation for the allowed physical conditions until April 8, 2014 when a district hearing officer ("DHO") relied on medical evidence to find that relator's allowed physical conditions had reached maximum medical improvement ("MMI").

{¶ 20} 3. On June 23, 2014, Scott L. Donaldson, Ph.D., conducted a psychological evaluation of relator. Dr. Donaldson administered the Minnesota Multiphasic Personality Inventory ("MMPI"), The Beck Depression Inventory, and The Burns Anxiety Inventory. Relying on the results of those tests and his psychological evaluation of relator, Dr. Donaldson opined that relator suffered from depressive disorder (NOS) and anxiety disorder (NOS) as a direct result of the 1991 industrial injury. Dr. Donaldson recommended a regimen of individual psychotherapy as well as psychotropic medicine, evaluation, physical rehabilitation, pain management, and a neuropsychological evaluation based on the severity and chronicity of relator's headaches and amnesia.

{¶ 21} 4. Relator was referred to Meleesa A. Hunt, Ph.D., for an independent medical evaluation. In her October 20, 2014 report, Dr. Hunt ultimately concluded that the subject/objective findings did not support the requested diagnosis of depressive disorder (NOS); however, the medical evidence in the file as well as her evaluation support the conclusion that the psychological condition of anxiety disorder (NOS) was a direct and proximate result of the 1991 industrial injury.

{¶ 22} 5. Following a hearing before a DHO on December 4, 2014, relator's workers' compensation claim was additionally allowed for anxiety disorder based on the medical reports of Drs. Donaldson and Hunt.

{¶ 23} 6. Shortly thereafter, relator began receiving individual psychotherapy with Dr. Donaldson.

{¶ 24} 7. Dr. Donaldson prepared a C-9 request for medical reimbursement seeking authorization for individual psychotherapy one time per week for three months.

{¶ 25} 8. Dr. Donaldson also completed a Physician's Report of Work Ability certifying that relator was temporarily not released to return to any work from June 23, 2014 through March 31, 2015 based on anxiety disorder.

{¶ 26} 9. A medical review was conducted by Charles S. Burke, M.D., who opined that, in his opinion, the newly allowed anxiety disorder was not disabling during the requested period of compensation, stating:

> I reviewed mental health progress note summaries from Dr. Donaldson, Ph.D., from 12/16/2014 to 01/23/2015. During this period of time, slight improvement was noted while outpatient therapy was being provided. There was no indication that the symptoms Mr. Burns was experiencing were disabling. There was no referral for psychiatric evaluation. There was no notation of pharmacologic treatment. There was no inpatient or partial hospitalization considered.

{¶ 27} 10. Dr. Donaldson completed a C-9 request for medical service reimbursement and requested additional weekly psychotherapy visits over the course of the next three months. Dr. Donaldson also submitted a second Physician's Report of Work Ability certifying that relator was temporarily not released to return to work until October 1, 2015.

{¶ 28} 11. A hearing was held before a DHO on April 3, 2015. The DHO determined the requested period of TTD compensation was causally related to the injury and the allowed psychological condition and granted same.

{¶ 29} 12. Relator continued seeing Dr. Donaldson one time a week while receiving TTD compensation.

{¶ 30} 13. On March 31, 2016, relator was examined by Kenneth Gruenfield, Psy.D., concerning the extent of disability. Dr. Gruenfield opined that relator's anxiety disorder had reached MMI, stating:

> The [Injured Worker] has achieved MMI at this time. This is based on two factors. First, the [Injured Worker] has participated in 38 treatment sessions according to records. He has exceeded ODG Guidelines of 13-20 treatment sessions for

the allowed condition. Second, according to the Mental Health Notes Summary, dated July 30, 2015, October 22, 2015, November 12, 2015, December 29, 2015, January 28, 2016, February 22, 2016, and the [Injured Worker] has problems with depression and anxiety and there is no noted improvement in treatment progress. This suggests that the [Injured Worker] has not made treatment gains in more than 8 months. As such, it is believed that he has achieved MMI at this time.

* * *

It is believed that the [Injured Worker] achieved MMI on March 31, 2016 as it has been more than 8 months without treatment gains.

{¶ 31} Dr. Gruenfield also opined that weekly psychotherapy sessions were no longer necessary; however, he indicated that maintenance therapy was recommended to maintain treatment gains.

{¶ 32} 14. Following a hearing before a DHO on May 12, 2016, relator was found to have reached MMI for the allowed psychological condition of anxiety disorder based on the report of Dr. Gruenfield.

{¶ 33} 15. Relator continued his weekly psychotherapy sessions with Dr. Donaldson through September 2016 when the managed care organization ("MCO") refused to authorize that many sessions. The MCO authorized six visits within the next three month period.

{¶ 34} 16. In a report dated March 13, 2017, Dr. Donaldson opined that relator's workers' compensation claim should be allowed for an additional psychological condition: major depressive disorder.

{¶ 35} 17. Relator was referred to Richard L. Odor, Ph.D., for an independent medical evaluation. In his April 25, 2017 report, Dr. Odor administered The Beck Depression Inventory II test as well as the Personality Assessment Inventory. As a result of that testing and his evaluation, Dr. Odor opined that relator did not meet the criteria for major depressive disorder, recurrent, moderate, but that he did otherwise meet the criteria for "Unspecified Depressive Disorder."

{¶ 36} 18. The matter was heard before a DHO on June 20, 2017. Based on the report of Dr. Odor, the DHO allowed relator's claim for unspecified depressive disorder.

{¶ 37} 19. Thereafter, relator filed a motion requesting the payment of TTD benefits from May 15, 2016 as a result of the newly allowed condition of unspecified depressive disorder. In support, relator submitted various treatment records from Dr. Donaldson, including more than 90 Medco-16 Mental Health Notes Summaries completed between December 17, 2014 and March 29, 2018. On all those forms, Dr. [D]onaldson noted the following symptoms: anxiety, depression, somatic and sleep. Dr. Donaldson also noted the following on every form: "At this time, it is unreasonable to assume that Mr. Burns will be able to return to gainful employment." On the majority of those forms, Dr. [D]onaldson noted that relator's prognosis was fair and that his progress was either unchanged, slightly improved, or improved. A few times, Dr. Donaldson indicated his condition had worsened.

{¶ 38} 20. Relator was referred to Michael A. Murphy, Ph.D., for an independent forensic psychological report. In his report dated August 25, 2017, Dr. Murphy identified the allowed conditions in relator's claim and the medical records which he reviewed. After administering certain psychological tests as well as reviewing the medical records before him and interviewing relator, Dr. Murphy concluded there was no new medical evidence to warrant a new period of TTD compensation. He specifically noted that relator had never been prescribed a psychotropic medication, he was approximately 16 years post-injury with several years of treatment, and that he had reached MMI for the newly allowed psychological condition.

{¶ 39} 21. Following a hearing before a DHO on October 16, 2017, relator's request for TTD compensation was denied. The DHO stated:

> The District Hearing Officer finds the Injured Worker is requesting payment of temporary total disability compensation benefits based upon the allowed condition of Unspecified Depressive Disorder. The District Hearing Officer notes that this condition was allowed in the claim in June 2017.
>
> The District Hearing Officer first notes that the Injured Worker upon questioning testified at hearing that he has treated with Scott Donaldson, Ph.D., since 2014 or 2015. The

Injured Worker further testified that his treatment with Dr. Donaldson continues to be the same despite the addition of the new condition. The District Hearing Officer finds no new circumstance or treatment that would support payment of temporary total disability compensation based solely on the allowance of the additional condition. The District Hearing Officer does not find the Injured Worker to be temporarily and totally disabled as a result of this condition.

The District Hearing Officer further notes that the Injured Worker testified that he last worked on 03/29/2013. The District Hearing Officer finds that the Injured Worker is not in the workforce and is not entitled to payment of temporary total disability compensation benefits for that reason. Specifically, there are no wages to replace as the Injured Worker has not worked for an extended period of time and no evidence was presented regarding attempts to return to the workforce.

For all these reasons, the request for payment of temporary total disability compensation benefits is denied. The District Hearing Officer further cites to the report of Michael Murphy, Ph.D., dated 08/25/2017.

All the evidence was reviewed and considered.

{¶ 40} 22.  Relator appealed and the matter was heard before a staff hearing officer ("SHO") on January 18, 2018.  The SHO vacated the prior DHO order finding the additional allowance of unspecified depressive disorder constituted a new and changed circumstance to award TTD compensation from May 15, 2016 through September 29, 2017. However, the SHO found there was a lack of medical evidence to support additional TTD compensation from September 30, 2017 to present.

{¶ 41} 23. The administrator for the Ohio Bureau of Workers' Compensation ("BWC") filed an appeal and the matter was heard before the commission on March 20, 2018.  Ultimately, the commission vacated the SHO order which had awarded a closed period of TTD compensation and determined that the entire request should be denied. Essentially, the commission found that relator's treatment with Dr. Donaldson had remained the same during and after the originally allowed psychological condition of anxiety disorder was allowed, his condition of unspecified depressive disorder had not

resulted in any changes in his psychological treatment regimen. On those grounds, the commission relied on Dr. Murphy's report and denied the requested period of compensation, stating:

> The Commission finds resolution of today's dispute concerns the psychological evidence submitted by the Injured Worker to support a finding of temporary total disability compensation. After reviewing said evidence, the Commission finds the Injured Worker failed to meet his burden of proving by the preponderance of the evidence he was temporarily and totally disabled due to the newly allowed condition of "unspecified depressive disorder" commencing 05/15/2016.
>
> The condition of "unspecified depressive disorder" was additionally allowed in the 06/20/2017 unappealed order of the District Hearing Officer. At that time, the Injured Worker was not receiving temporary total disability compensation as a result of "anxiety disorder" because the 06/27/2016 Staff Hearing Officer order found "anxiety disorder" had reached maximum medical improvement.
>
> Temporary total disability compensation can be reinstated notwithstanding declaration of maximum medical improvement upon a finding of new and changed circumstances. *State ex rel. Bing v. Indus. Comm.,* 61 Ohio St.3d 424, 575 N.E.2d 177 (1991). However, the addition of new conditions to a claim "does not necessarily guarantee the payment of a new period of temporary total disability compensation." *State ex rel. Ritzie v. Reece-Campbell, Inc.,* 146 Ohio St.3d 259, 2015-Ohio-5224, 55 N.E.3d 1062. "[N]ewly allowed conditions constitute new and changed circumstances which *may* warrant the payment of a new period of TTD compensation *provided that* all other requirements for the payment of TTD compensation are met." *State ex rel. Wyrebaugh v. Indus. Comm.,* 10th Dist. Franklin No. 06AP-610, 2007-Oio-1939, ¶ 37.
>
> The Commission finds the Injured Worker has consulted with his psychologist, Scott L. Donaldson, Ph.D. in the instant claim since 12/30/2014. A recent C-9 Request for Medical Service Reimbursement or Recommendation for Additional Conditions for Industrial Injury or Occupational Disease signed by Dr. Donaldson on 02/06/2018, documents approval of the Injured Worker's request for sessions of individual psychotherapy twice a month over three months.

However, this request does not reflect an increase in frequency or duration of said therapy, which the Commission finds has remained relatively consistent since the Injured Worker's initial treatment with Dr. Donaldson. Moreover, the Commission finds no psychotropic medications have been prescribed following the additional allowance of "unspecified depressive disorder" and, in fact, no such medication has ever been authorized in this claim. Moreover, based upon the 08/25/2017 report from Michael A. Murphy, Ph.D., the Commission finds no evidence the Injured Worker's activities of daily living have been impaired as a result of the newly allowed psychological condition. Dr. Murphy documents the Injured Worker prepares family meals, does laundry, cares for two horses and seven cats, helps his children with homework (including math and science), does grocery shopping, cares for his personal basic needs, and handles his family's finances.

As such, based upon the above-mentioned findings and the report from Dr. Murphy, the Commission concludes the Injured Worker is not temporarily and totally disabled due to the newly allowed psychological condition. Moreover, the Commission further concludes Dr. Murphy's report is persuasive evidence upon which to make the further finding that "unspecified depressive disorder" has reached maximum medical improvement.

All evidence was reviewed and considered prior to rendering this decision.

(Emphasis sic.)

{¶ 42} 24. Relator filed an application for permanent total disability ("PTD") compensation on December 1, 2017.

{¶ 43} 25. Following a hearing before an SHO on April 13, 2018, relator's request was granted:

After full consideration of the issue, it is the order of the Staff Hearing Officer that the Injured Worker's IC-2 Application for Compensation for Permanent Total Disability is granted. Permanent and total disability compensation is awarded from 5/23/2017 (less any compensation that previously may have been awarded over the same period), and is to continue without suspension unless future facts or circumstances should warrant the stopping of the award. Such payments are to be made in accordance with R.C. 4123.58(A).

> Based upon the report(s) of Dr(s). Scott Donaldson, Ph.D. (5/23/2017 Medco-16) and Donato Borrillo, M.D. (11/19/2017), it is found that the Injured Worker is unable to perform any sustained remunerative employment solely as a result of the medical impairment caused by the allowed condition(s). Therefore, pursuant to *State ex rel. Speelman v. Indus. Comm.,* 73 Ohio App.3d 757, 598 N.E.2d 192 (10th Dist.1992), it is not necessary to discuss or analyze the Injured Worker's non-medical disability factors.
>
> The 5/23/2017 start date for the award is based on the Medco-16 from Dr. Donaldson, the earliest report relied upon in granting the award.

{¶ 44} 26. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 45} For the reasons that following, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

{¶ 46} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 47} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 48} TTD compensation awarded pursuant to R.C. 4123.56has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment.  Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of claimant is made available by the employer or another employer; or (4) claimant has reached MMI.  *See* R.C. 4123.56(A); *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982).

{¶ 49} Relator argues the commission abused its discretion when it relied on the medical report of Dr. Murphy to deny the requested period of TTD compensation.  Relator argues that Dr. Murphy's report cannot support the denial because Dr. Murphy was not given some of Dr. Donaldson's treatment plans nor health note summaries, nor was he given the report from Dr. Odor.  Citing *State ex rel. Bowie v. Greater Cleveland Regional Transit Auth.*, 75 Ohio St.3d 458 (1996), relator argues that Dr. Murphy's report addressing the extent of relator's disability during the requested retroactive period cannot constitute some evidence on which the commission could rely.

{¶ 50} The magistrate finds relator's argument to be unpersuasive.  The situation presented in the *Bowie* case differs from the situation in the present case.  Van Roy Bowie sustained a work-related injury on January 17, 1990.  Two days after he was taken to the hospital, Bowie was examined by Daniel P. McFadden, D.C., who noted thoracic muscle tension and right lumbar curvature with lumbar muscle tension, swelling, pain on palpation, and reduced range of motion.  Dr. McFadden described Bowie's prognosis as guarded, recommended weekly treatment for ten weeks, and subsequently certified him as being temporarily totally disabled from the date of the accident with an estimated return to work date of May 15, 1990.

{¶ 51} On July 12, 1990, Bowie was examined by Dr. Gary I. Katz who stated that his examination of Bowie's lumbar spine and lower extremities was completely within normal limits, found no objective findings that he needed any treatment, and that he was capable of returning to his former position of employment.  Based on Dr. Katz's report, the commission denied the request for TTD compensation.

{¶ 52} Bowie filed a mandamus complaint in the Tenth District Court of Appeals which was denied.  However, Bowie's appeal to the Supreme Court of Ohio was successful. The court stated:

> We are asked to evaluate the commission's order for "some evidence" in support of its decision. Upon review, we find it necessary to return the cause to the commission for further consideration and amended order.
>
> This controversy centers around Dr. Katz's report, which was prepared after the claimed period of disability had ended. Claimant asserts that a report which post-dates the period of disability can never constitute "some evidence" upon which the commission can rely. We disagree.
>
> There are parallels between an examining doctor who offers a retroactive opinion and a doctor who renders an opinion as to a claimant's current status without examination. The evidentiary acceptability of the latter is long-settled, having been equated to an expert's response to a hypothetical question. *State ex rel. Wallace v. Indus. Comm.* (1979), 57 Ohio St. 2d 55, 11 Ohio Op. 3d 216, 386 N.E.2d 1109; *State ex rel. Hughes v. Goodyear Tire & Rubber Co.* (1986), 26 Ohio St. 3d 71, 26 Ohio B. Rep. 61, 498 N.E.2d 459; *State ex rel. Lampkins v. Dayton Malleable, Inc.* (1989), 45 Ohio St. 3d 14, 542 N.E.2d 1105.
>
> As in the case of a non-examining physician, however, certain safeguards must apply when dealing with a report that is not based on an examination done contemporaneously with the claimed period of disability. We find it imperative, for example, that the doctor review all of the relevant medical evidence generated prior to that time. In this instance, the conspicuous reference to the emergency room reports coupled with the equally conspicuous lack of reference to Dr. McFadden's reports suggests to us that Dr. Katz may have overlooked the latter. We cannot, therefore, find that Dr. Katz's report is "some evidence" upon which the commission could rely.
>
> Removal of Dr. Katz's report, however, does not compel an award of temporary total disability compensation. As we observed in *Lampkins, supra*:

> "Any award of temporary total disability compensation must be supported by some evidence establishing that a temporary condition precluded the return to the former position of employment. *** Therefore, a lack of evidence supporting a denial of temporary total disability benefits cannot automatically translate into some evidence supporting an award of such benefits. Recognizing that the determination of disability is a commission function, we thus remand the cause to the commission to determine whether appellee qualifies for temporary total disability compensation and to identify the evidence supporting its finding." 45 Ohio St. 3d at 16-17, 542 N.E.2d at 1108.
>
> We find a similar disposition to be warranted in this case. Accordingly, the judgment of the court of appeals is reversed and a limited writ is issued returning the cause to the commission for further consideration and amended order.

*Id.* at 460-61.

{¶ 53} In the present case, it is true that Dr. Murphy was asked to provide a retroactive determination as to relator's ability to return to work. However, Dr. Murphy's examination was contemporaneous with part of the claimed period of disability. While it is true that Dr. Murphy did not have all of relator's treatment records, an examining physician is not required to have and review all of the medical evidence which preceded the examination; the examining physician is, however, required to review "all of the relevant medical evidence generated prior to that time." As such, the question is whether or not Dr. Murphy reviewed all the relevant medical evidence. *Id.* at 460.

{¶ 54} As noted in the findings of fact, Dr. Donaldson's treatment of relator has remained relatively consistent throughout and all of the Medco-16's indicate relator had symptoms of both anxiety and depression, his prognosis and progress remained virtually unchanged and Dr. Donaldson consistently opined that it was unreasonable to expect that relator would ever return to work. For several months, Dr. Donaldson saw relator weekly until the employer's MCO determined that those visits were too frequent and only authorized two sessions per month. As such, since September 2016, relator treated with Dr. Donaldson with twice monthly visits. Further, Dr. Murphy is correct in stating that relator has never been prescribed any medication for either of his psychological

conditions.  At the time that relator's TTD compensation which he was receiving for the anxiety disorder was terminated, he was seeing Dr. Donaldson weekly.  Beginning in September 2016, relator was seeing Dr. Donaldson two times per month and still had not been prescribed any medication.

{¶ 55} In denying the requested period of TTD compensation, the commission specifically noted the frequency of relator's visits with Dr. Donaldson had not increased after the new psychological condition was allowed and that no medications had been prescribed.  Those facts are true and based on those facts alone, the commission had discretion to determine that relator had not demonstrated that the newly allowed psychological condition was now causing him to be disabled after the anxiety disorder was found to reach MMI.  To the extent the commission relied on the report of Dr. Murphy, it did so based on Dr. Murphy's findings that relator's activities of daily living were not impaired by the newly allowed psychological condition.

{¶ 56} Unlike the *Bowie* case, the evidence here shows that relator's psychological treatment has remained much the same over the entire course of the treatment, and had in fact decreased in frequency, and relator had never needed any medication.  It is undisputed that the addition of a new condition to a claim does not necessarily guarantee the payment of a new period of TTD compensation.  Instead, newly allowed conditions constitute new and changed circumstances which may or may not warrant the payment of a new period of TTD compensation.  Here, in the absence of any evidence that relator's newly allowed psychological condition had rendered him more disabled than the anxiety disorder which had been found to have reached MMI, the commission did not abuse its discretion in finding that relator did not meet his burden of proof.  As such, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion in denying his request for TTD compensation, and this court should deny his request for a writ of mandamus.

                                                                                                 /S/ MAGISTRATE
                                                                                                 STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).