DECISION
{¶ 1} Relator, Jack H. Wyrebaugh, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order which denied temporary total disability ("TTD") compensation beginning September 1, 2002, and ordering the commission to find he is entitled to that compensation.
 {¶ 2} This matter was referred to a magistrate of this court, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, and recommended that this court deny relator's request for a writ of mandamus. (Attached as Appendix A.) No objections have been filed to that decision.
 {¶ 3} As there have been no objections filed to the magistrate's decision, and it contains no error of law or other defect on its face, based on an independent review of the evidence, this court adopts the magistrate's decision as its own. Relator's request for a writ of mandamus is denied.
Writ denied.
 McGRATH and TYACK, JJ., concur. *Page 3 
 APPENDIX A MAGISTRATE'S DECISION *Page 4 {¶ 4} Relator, Jack H. Wyrebaugh, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied his application for temporary total disability ("TTD") compensation beginning September 1, 2002, and ordering the commission to find that he is entitled to that compensation.
Findings of Fact: {¶ 5} 1. Relator sustained a work-related injury on February 9, 1987. At the time, relator was employed as a mechanic. Relator's workers' compensation claim was initially allowed for "acute lumbar strain; strain of cervical spine." TTD compensation was paid for this condition beginning February 10, 1987.
 {¶ 6} 2. Shortly thereafter, relator's claim was additionally allowed for "substantial aggravation of pre-existing generalized anxiety disorder with features of depression and psychogenic pain." *Page 5 
 {¶ 7} 3. Relator received TTD compensation, first for his allowed physical conditions, and later for his allowed psychological conditions. The commission determined that relator's originally allowed physical conditions reached maximum medical improvement ("MMI") in 1993. The commission also determined that relator's allowed psychological condition had reached MMI in 2002.
 {¶ 8} 4. On March 15, 2003, relator sought treatment at the Swanton Chiropractic Center, Inc., with Drs. W.S. Brymer and Matt Spiers. Dr. Brymer completed a C-9 dated March 18, 2003, seeking authorization for 15 chiropractic treatments over the next three months. This request was approved.
 {¶ 9} 5. On April 8, 2003, Dr. Brymer completed another C-9 requesting further treatment as well as a lumbar MRI to help evaluate the reason for relator's continued pain and restricted motion. This request was also approved.
 {¶ 10} 6. The MRI taken on April 13, 2003, revealed degenerative disc disease.
 {¶ 11} 7. Relator began treating with George Darah, D.O., on April 10, 2003. Thereafter, Dr. Darah completed a C-9 form requesting a pain management evaluation by James Bassett, Jr., M.D. This request was approved.
 {¶ 12} 8. Dr. Bassett evaluated relator and, on September 24, 2003, completed a C-9 requesting approval for three caudal epideral injections. This was approved.
 {¶ 13} 9. Dr. Darah completed another C-9 dated December 1, 2003, for continued pain management treatment and continued chiropractic treatment. This was conditionally approved because the April 16, 2003 MRI *Page 6 
indicated that relator had conditions which were not currently allowed in his claim.
 {¶ 14} 10. On December 11, 2003, Dr. Bassett completed a C-9 seeking a consultation with an orthopedic surgeon. The consultation with Daniel Sullivan, M.D., was approved. In his March 5, 2004 report, Dr. Sullivan opined that relator was not a candidate for surgical intervention.
 {¶ 15} 11. Dr. Spiers completed a C-9 on February 3, 2004, seeking chiropractic treatment at the rate of once per month for the next 12 months.
 {¶ 16} 12. This request was denied on the basis that the treatment was for a degenerative disease which was not currently allowed in the claim.
 {¶ 17} 13. On April 13, 2004, relator sought to have his claim additionally allowed for certain conditions.
 {¶ 18} 14. The matter was heard before a district hearing officer ("DHO") on July 14, 2004, and was granted. As such, relator's claim was additionally allowed for the following conditions:
 Grant additional allowance of aggravation of pre-existing degenerative changes of the dorsolumbar junction with mild wedge compression deformity at D12; aggravation of pre-existing multi-level degenerative disc disease of the lumbar spine at L3-4 and L4-5.
 {¶ 19} 15. Thereafter, Dr. Bassett's request for a diskogram was approved. Relator also had a CT scan of his lumbar spine in September 2004, and a request for a TNS unit trial was also approved.
 {¶ 20} 16. Dr. Darah completed a C-9 on November 3, 2004, seeking physical therapy and continued pain management with Dr. Bassett. This was approved. Additional authorization for a course of massage *Page 7 
therapy was also approved. In March 2005, additional pain management evaluation was also approved.
 {¶ 21} 17. Thereafter, relator filed a motion requesting TTD compensation retroactive two years of the date of the filing of the motion. The motion was filed on October 13, 2004.
 {¶ 22} 18. Relator's motion for TTD compensation included the following: (a) the C-84 signed by relator and dated September 14, 2004; (b) the C-84 signed by Dr. Darah and dated September 14, 2004. Dr. Darah indicated that the newly allowed conditions currently presented relator from returning to work and that relator was still being treated for the conditions which had previously reached MMI. Dr. Darah certified TTD compensation from September 1, 2002 until an estimated return-to-work date of December 31, 2004. Dr. Darah did not provide any objective findings; (c) Dr. Darah's September 14, 2004 progress note showing positive Faberj, Positive SL Test and low back pain; (d) the September 21, 2004 diskogram which showed mild facet degeneration changes and mild canal stenosis at L3-4 and L4-5; (e) progress notes from Ahed T. Nahhas, M.D., dated August 23, 2004, regarding relator's coronary artery disease. Dr. Nahhas noted that relator had progressive exertional angina and dyspnea on exertion and chronic obstructive pulmonary disease; (f) the C-84 signed by Dr. Spiers and dated September 14, 2004. Dr. Spiers indicated that the newly allowed conditions were disabling relator. He provided his objective findings and certified a period of disability from February 3, 2004 through an estimated return-to-work date of May 14, 2004; and (g) Dr. Spiers' treatment records from March 15, 2003 through February 3, 2004.
 {¶ 23} 19. A second C-84 was prepared by Dr. Darah and was dated May 24, 2005. On that C-84, Dr. Darah certified a period of TTD from March 17, 2003 through an estimated return-to-work date of August 23, *Page 8 
2005. On that C-84, Dr. Darah noted that the conditions which were currently preventing relator from working were the allowed physical conditions which had previously been found to have reached MMI. Dr. Darah further indicated that he was also treating relator for the newly allowed conditions. Again, Dr. Darah did not note any clinical objective findings as a basis for his recommendation.
 {¶ 24} 20. Relator was also examined by Mark Nader, D.C., who issued a report dated April 18, 2005. In the current complaint portion of his report, Dr. Nader noted that relator indicated that he had not experienced any significant lasting improvement in his physical conditions since he began treatment more than 18 years ago. After noting his physical findings, Dr. Nader noted the records which he had reviewed. Dr. Nader concluded that relator's objective findings and subjective complaints were incompatible with the allowed conditions and diagnostics. Based upon a reasonable degree of medical certainty, Dr. Nader opined that relator had reached MMI and that any current period of disability was directly related to significant underlying health problems including cardiovascular and ontological (prostate cancer) and not the allowed conditions in the claim. Further, Dr. Nader opined that relator was fully capable of returning to his former position of employment without restrictions or work-site modifications.
 {¶ 25} 21. Relator's motion requesting TTD compensation was heard before a DHO on May 27, 2005, and resulted in an order denying the requested compensation as follows:
 The injured worker requests payment of Temporary Total Disability Compensation based upon the additional con-ditions of "aggravation of pre-existing degenerative changes of the dorsal lumbar junction with mild *Page 9 
wedge compression deformity at D12; aggravation of pre-existing multi-level degenerative disc disease of the lumbar spine at L3-4 and L4-5", based upon a Commission order dated July 13, 2004. The injured worker previously had been found to have reached Maximum Medical Improvement. The injured worker requests payment of Temporary Total Disability Com-pensation two years from the filing of the instant motion, or October 13, 2002.
 A review of a medical evidence in file fails to support the injured worker's contention. Dr. Bassett opined that the injured worker had reached Maximum Medical Improvement for the allowed conditions in October, 2004. Dr. Spears [sic] opined that the injured worker was at Maximum Medical Improvement on April 28, 2005. This District Hearing Officer could find no particular treatment regimen directed at the newly allowed conditions which would support the injured worker's contention that he is once again temporarily and totally disabled.
 This District Hearing Officer finds the opinion of Dr. Nader to be most persuasive that the injured worker is not temporarily and totally disabled due to the allowed conditions in the instant claim. *Page 10 
 Therefore, it is the order of this District Hearing Officer to DENY payment of Temporary Total Disability Compensation from October 13, 2002 to present.
 All evidence in file was reviewed and considered. This order is based upon the report of Dr. Nader, dated April 6, 2005; and the reports and records of Dr. Spears [sic] and Dr. Bassett.
(Emphasis sic.)
 {¶ 26} 22. Relator's appeal was heard before a staff hearing officer ("SHO") on June 30, 2005. The SHO modified the prior DHO's order and denied relator's request for TTD compensation as follows:
 This Staff Hearing Officer finds the C-84's that are submitted in support of the new period of Temporary Total Disability Compensation do not indicate that the diagnoses requested are the newly allowed conditions. In addition, the treatment perimeters have not changes [sic] overall since the finding of Maximum Medical Improvement previously. Dr. Bassett went on to opine Maximum Medical Improvement including the newly allowed conditions on 10/1/2004, and Dr. Spiers, also found Maximum Medical Improvement including the newly allowed conditions on 4/28/2005. As a result, this Staff Hearing Officer is not persuaded that the preponderance of the *Page 11 
evidence supports the period of disability after the Maximum Medical Improvement finding. As a result, the Temporary Total Disability Compensation requested from 10/13/2002 is hereby DENIED.
 This order is based upon the reports of Dr. Bassett, dated 10/1/2004; Dr. Spiers, dated 4/28/2005 and the C-84's, which are not some evidence of Temporary Total Disability, which could be relied upon, as the diagnoses are not the newly allowed conditions.
(Emphasis sic.)
 {¶ 27} 23. Relator's further appeal was refused by order of the commission mailed July 20, 2005.
 {¶ 28} 24. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 29} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *Page 12 State ex rel. Lewis v. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 30} Relator makes two arguments in the present case. First, relator contends that where a new condition is allowed in a claim, a new period of TTD compensation may be awarded based upon that newly allowed condition and claimants are not required to show new and changed circumstances. Second, relator contends that the commission's order denying him TTD compensation is not supported by "some evidence." In making this argument, relator first contends that the C-84s he submitted do constitute some evidence in support of his request for TTD compensation, contrary to the commission's determination. Further, relator contends that none of the evidence actually relied upon by the commission to deny him TTD compensation constitute "some evidence." For the reasons that follow, the magistrate finds that relator's arguments lack merit and this court should deny relator's request for a writ of mandamus.
 {¶ 31} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of claimant is made available by the employer or another employer; or (4) claimant has reached MMI. See R.C. 4123.56(A);State ex rel. Ramirez v. Indus. Comm. (1982), 69 Ohio St.2d 630. *Page 13 
 {¶ 32} In the present case, relator asserts that TTD compensation is payable based upon his newly allowed conditions. The commission's granting of an additional claim allowance after a finding of MMI may be cause for resuming TTD compensation if the new claim allowance is not at MMI and the other requirements for TTD compensation are met. SeeState ex rel. Basye v. Indus. Comm. (1992), 64 Ohio St.3d 68. However, the granting of an additional claim allowance after a finding of MMI does not automatically resume the payment of TTD compensation. State exrel. Vance v. Marikis (1999), 86 Ohio St.3d 305.
 {¶ 33} Relator contends that the commission actually applied a more stringent requirement on him by requiring that he demonstrate new and changed circumstances before TTD compensation could be resumed. Although the commission did not overtly apply this standard, relator contends that it is apparent the commission did so. Relator contends that he was not required to show new and changed circumstances and cites to a paragraph from this court's decision adopting the decision of the magistrate in State ex rel. Parnell v. Indus. Comm., Franklin App. No. 02AP-699, 2003-Ohio-2308, ¶ 26, which states:
 In addition, where the claimant develops a new condition, and it is allowed in the claim, a new period of TTD com-pensation may be awarded based on the newly allowed condition. Res judicata is not involved — and new, changed circumstances need not be shown under R.C. 4123.52 — because there is no prior order terminating TTD for that condition. See State ex rel. Basye v. Indus. Comm. (1992), 64 Ohio St.3d 68, 591 N.E.2d 1233. *Page 14 
 {¶ 34} In Basye, the claimant's claim had been allowed for certain physical conditions which were found to have reached MMI in March 2001. The claimant changed physicians and continued to get treatment. Ultimately, her new physician requested authorization for surgery and that surgery was performed in January 2002. Claimant sought the reinstatement of TTD compensation beginning in May 2001, when she began seeing her new physician. The commission did grant claimant a new period of TTD compensation, but determined that the January 2002 date of the surgery was the start date for that new period of compensation. The commission determined that the treatment claimant had received from March 2001 until the surgery in January 2002, was maintenance treatment and that there was no real change in the claimant's treatment until she underwent surgery to improve her condition.
 {¶ 35} The claimant filed a mandamus action in this court requesting that this court order the commission to reinstate her TTD compensation beginning in March 2001. This court cited State ex rel. Bing v. Indus.Comm. (1991), 61 Ohio St.3d 424, State ex rel. Navistar Intematl.Transp. Corp. v. Indus. Comm. (1993), 66 Ohio St.3d 267, and State exrel. Chrysler Corp. v. Indus. Comm. (1998), 81 Ohio St.3d 158, for the legal proposition that surgery can constitute a new and changed circumstance justifying the reinstatement of TTD compensation even after the allowed conditions had previously been found to have reached MMI.
 {¶ 36} Thereafter, the magistrate went on to make the statement quoted by relator. However, the quoted paragraph was not relevant to this court's decision in Parnell because the claimant therein did not have any newly allowed conditions.
 {¶ 37} It may or may not be a matter of semantics to say that when a claim has been additionally allowed for new conditions that there has been *Page 15 
a change in or a showing of new and changed circumstances. However, the simple fact that new conditions have been allowed in a claim does not necessarily guarantee the payment of a new period of TTD compensation. As noted earlier, the Supreme Court of Ohio has held that newly allowed conditions constitute new and changed circumstances which may warrant the payment of a new period of TTD compensation provided that all other requirements for the payment of TTD compensation are met. In other words, the burden remains on the claimant to establish that the newly allowed conditions render claimant temporarily and totally disabled.
 {¶ 38} As such, the magistrate finds that any statement within the commission's order alluding to new and changed circumstances is not a misstatement of the law and furthermore is not relevant to this mandamus action. In the present case, the commission specifically found that the C-84s completed by Dr. Darah did not constitute some evidence upon which the commission could have relied in awarding relator TTD compensation. Relator vigorously disagrees; however, this magistrate finds that the commission did not abuse its discretion in finding that the evidence relator submitted did not constitute some evidence upon which the commission could have relied.
 {¶ 39} In the present case, Dr. Darah's first C-84 dated September 13, 2004, did list the newly allowed conditions as the conditions which, in his opinion, were currently rendering relator temporarily and totally disabled. However, as noted previously in the findings of fact, Dr. Darah did not provide any objective findings in support of this statement. Although his September 13, 2004 treatment notes were attached, those notes were quite sketchy and only noted findings equivalent to low back pain which, arguably, relator had continued to experience for years. Nevertheless, less than one year later, Dr. Darah completed a second C-84 dated May 24, *Page 16 
2005. In that C-84, Dr. Darah specifically listed the originally allowed physical conditions which had previously been found to have reached MM I as the conditions which were currently rendering relator temporarily and totally disabled. As such, Dr. Darah issued conflicting C-84s. Dr. Spiers did submit a C-84 but he certified TTD from February 3 to May 14, 2004. Because the evidence relator submitted was contradictory, the magistrate finds the commission did not abuse its discretion when it found that the C-84s did not constitute some evidence supporting a period of TTD compensation. Furthermore, Dr. Darah's certification of TTD compensation back to September 2002, predated the date when Dr. Darah first began treating relator. Pursuant to State ex rel. Bowie v.Greater Cleveland Regional Transit Auth. (1996), 75 Ohio St.3d 458, a doctor can only certify a period of TTD compensation retroactively if the doctor has reviewed the other medical evidence relevant to that time period and accepts the findings as valid before rending his opinion. In the present case, there is no evidence that Dr. Darah reviewed the prior treatment records. As such, his certification of a retroactive period of TTD compensation before he even examined relator does not constitute some competent credible medical evidence.
 {¶ 40} For the foregoing reasons, the magistrate finds that the commission did not abuse its discretion when it determined that the C-84s submitted by relator did not constitute some evidence in support of relator's request for TTD compensation.
 {¶ 41} In reality, the resolution of the first issue renders a discussion of relator's second issue irrelevant. However, the magistrate will address it briefly nevertheless.
 {¶ 42} Relator contends that the evidence upon which the commission relied to find that his newly allowed conditions had been at MM I *Page 17 
since either October 2004 or April 2005, does not constitute "some evidence" upon which the commission could rely to deny the entire period of compensation. With regards to Dr. Bassett's opinion that all of relator's conditions, including the newly allowed conditions, had reached MMI on October 12, 2004, relator argues that only a claimant's treating physician's opinion regarding MMI can be used to support a finding of MMI. Relator appears to be arguing that, pursuant toState ex rel Russell v. Indus. Comm. (1998), 82 Ohio St.3d 516, a finding of MMI to terminate the payment of TTD compensation cannot be applied until the date of the actual hearing. Relator contends the commission used the October 1, 2004 date of Dr. Bassett's report to find that he had reached MMI at that time and to terminate his TTD compensation. However, that is not what happened in the present case. Relator was not receiving TTD compensation at the time. Instead, relator was requesting a new period of TTD compensation. First, the commission found that relator's medical evidence did not support the granting of TTD compensation. Next, the commission noted that Dr. Bassett opined that relator had reached MMI at least as early as August 1, 2004. There is no misapplication of Russell here.
 {¶ 43} Furthermore, relator contends that the opinion of Dr. Spiers that he had reached MMI as of April 28, 2005, cannot be used to support the commission's denial of TTD compensation for any dates prior to April 28, 2005. However, as noted earlier, the commission first found that relator's evidence did not support the payment of TTD compensation over the period requested by relator. The commission then went on to note that other doctors had found that he had reached MMI. The commission did not use Dr. Spiers' report to deny the payment of TTD compensation prior to April 28, 2005. Instead, the commission pointed to it as other evidence in *Page 18 
the record indicating that relator had reached MM I at some point in time during the requested period.
 {¶ 44} At oral argument, counsel specifically argued that perhaps relator has sought too lengthy a period of compensation and arguably conceded that the commission properly denied at least some of the requested period. Nevertheless, counsel argued that the commission should have more carefully reviewed the evidence and asserts that the commission should have granted some period of compensation (i.e., at least from March 15, 2003 as certified by Dr. Spiers and following the MRI results). However, weight and credibility are for the commission to determine. This court's role is not a de novo review and it is not our province to reweigh the evidence relator presented before the commission.
 {¶ 45} Based on the foregoing, it is this magistrate's conclusion that relator had not demonstrated that the commission abused its discretion in finding that the evidence he submitted did not constitute some evidence supporting the payment of TTD compensation and relator's request for a writ of mandamus should be denied. *Page 1