**[Cite as *State ex rel. Williams v. Indus. Comm.*, 2025-Ohio-5419.]**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Alisa L. Williams, | : | |
| Relator, | : | No. 24AP-462 |
| v. | : | (REGULAR CALENDAR) |
| Industrial Commission of Ohio et al., | : | |
| Respondents. | : | |

---

D E C I S I O N

Rendered on December 4, 2025

---

**On brief:** *Urban Co.*, *L.P.A.*, and *Anthony P. Christine*, for relator.

**On brief:** *Dave Yost*, Attorney General, and *Diane Burris*, for respondent, Industrial Commission of Ohio.

---

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BEATTY BLUNT, J.

{¶ 1}   Relator, Alisa L. Williams, seeks a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying her request for temporary total disability ("TTD") compensation and to issue a new order granting TTD compensation based on the newly allowed condition of bulging disc L5-S1 beginning on September 22, 2023.

{¶ 2}   This court referred this matter to a magistrate of this court pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals.  The magistrate considered the action on its merits and issued a decision that includes findings of fact and conclusions of law, which is appended hereto.  The magistrate determined there were no new and changed circumstances warranting TTD based on the newly allowed condition of bulging disc L5-S1.  The magistrate further determined that Dr. Thomas Yankush's report was some evidence

on which the commission could properly rely in denying TTD compensation be reinstated commencing on September 22, 2023, and thus, the commission did not abuse its discretion in doing so. Thus, the magistrate has recommended that this court deny relator's request for a writ of mandamus.

{¶ 3} Relator has filed the following two objections to the magistrate's decision:

[1.]    The Magistrate erred in finding there was no new and changed circumstances warranting the temporary total disability.

[2.]    The Magistrate erred in finding Dr. Yankush's opinion is considered some evidence to deny temporary total disability.

{¶ 4} Because relator has filed objections, we must independently review the record and the magistrate's decision to ascertain whether "the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). Relator has not objected to the factual findings of the magistrate and, upon our review, we find no error pertaining to same. We thus turn to whether the magistrate has appropriately applied the law in this matter.

{¶ 5} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show she has a clear legal right to the relief sought and that that commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.* 11 Ohio St.2d 141 (1967). "A clear legal right to a writ of mandamus exists when the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record." *State ex rel. Metz v. GTC, Inc.*, 2015-Ohio-1348, ¶ 11, citing *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). This court will not disturb the commission's decision if there is "some evidence" to support it. *State ex rel. Fiber-Lite Corp. v. Indus. Comm.*, 36 Ohio St.3d 202 (1988); *State ex rel. Bennett v. Aldi, Inc.*, 2016-Ohio-83, ¶ 6 (10th Dist.). " 'Where a commission order is adequately explained and based on some evidence, . . . the order will not be disturbed as manifesting an abuse of discretion.' " *State ex rel. Avalon Precision Casting Co. v. Indus. Comm.*, 2006-Ohio-2287, ¶ 9, quoting *State ex rel. Mobley v. Indus. Comm.*, 1997-Ohio-181, ¶ 16. Thus, so long as some evidence supports the commission's decision, this court must defer to the commission.

{¶ 6} In making its determination, the resolution of disputed facts is within the final jurisdiction of the commission. *State ex rel. Allerton v. Indus. Comm.*, 69 Ohio St.2d 396, 397 (1982). Questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 7} Relevant to the instant matter, we begin by noting that TTD compensation awarded pursuant to R.C. 4123.56 is compensation for wages lost when a claimant's injury prevents a return to the former position of employment. " 'The purpose of TTD compensation is to "compensate an injured employee for the loss of earnings he [or she] incurs while [the] injury heals." ' " *Ewel v. Montgomery Cty. Court of Common Pleas*, 2014-Ohio-3047, ¶ 13 (10th Dist.), quoting *Cordial v. Ohio Dept. of Rehab. & Corr.*, 2006-Ohio-2533, ¶ 8 (10th Dist.), quoting *State ex rel. Baker v. Indus. Comm.*, 2000-Ohio-168, ¶ 13.

{¶ 8} Upon the foregoing predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) the claimant has returned to work; (2) the claimant's treating physician provides a written statement that the claimant is able to return to the former position of employment; (3) work within the physical capabilities of the claimant is made available by the employer or another employer; or (4) the claimant has reached maximum medical improvement. R.C. 4123.56(A); *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982). Thus, "R.C. 4123.56(A) designates maximum medical improvement as one of four statutory bases for denying temporary total disability compensation." *State ex rel. Barnes v. Indus. Comm.*, 2007-Ohio-4557, ¶ 14. "Maximum medical improvement" ("MMI") is defined as "a treatment plateau (static or well-stabilized) at which no fundamental functional or physiological change can be expected within reasonable medical probability in spite of continuing medical or rehabilitative procedures. An injured worker may need supportive treatment to maintain this level of function." Adm.Code 4121-3-32(A)(1).

{¶ 9} Further relevant to the instant matter, we next observe that pursuant to R.C. 4123.52, the commission has continuing jurisdiction over each case and, subject to certain temporal limitations, it "may make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion is justified." R.C. 4123.52(A). The

Supreme Court of Ohio has construed R.C. 4123.52 to limit the commission's continuing jurisdiction, holding that "the prerequisites for its exercise are (1) new and changed circumstances, (2) fraud, (3) clear mistake of fact, (4) clear mistake of law, or (5) error by an inferior tribunal." *State ex rel. Knapp v. Indus. Comm.*, 2012-Ohio-5379, ¶ 13, citing *State ex rel. Nicholls v. Indus. Comm.*, 1998-Ohio-616, ¶ 10-20, citing *State ex rel. Bd. of Edn. of the Cuyahoga Hts. Local School Dist. v. Johnston*, 58 Ohio St.2d 132 (1979). *See State ex rel. Griffey v. Indus. Comm.*, 125 Ohio St. 27, 31 (1932) (stating that G.C. 1465-86, which allowed the commission to " 'from time to time make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion may be justified[,]' . . . could not have been intended to take away all finality to the orders and findings of the commission").

{¶ 10} No language concerning "new and changed circumstances" appears in the provisions governing TTD compensation in R.C. 4123.56. However, courts have found a new and changed circumstances requirement to be applicable in the context of continuing jurisdiction to consider a subsequent application for TTD compensation following a finding of MMI that terminates a prior or initial period of TTD compensation. *State ex rel. Bing v. Indus. Comm.*, 61 Ohio St.3d 424 (1991). The Supreme Court of Ohio recognized in *Bing* that "claimants who had previously been declared as MMI could experience temporary exacerbation of their condition that justified further treatment or even temporary total disability compensation, as the claimant struggled to recover his or her previous level of well-being." *State ex rel. Conrad v. Indus. Comm.*, 2000-Ohio-365, ¶ 14, citing *Bing*. Based on this recognition, the court in *Bing* found that "even where temporary total disability compensation payments have been previously terminated, R.C. 4123.52 grants the Industrial Commission continuing jurisdiction to award temporary total disability compensation where the claimant has again become temporarily totally disabled." *Bing* at 426. Thus, "[t]he commission's continuing jurisdiction . . . allows for reinstatement of temporary total disability compensation after an MMI determination if new and changed circumstances warrant." *State ex rel. Moore v. Internatl. Truck & Engine*, 2007-Ohio-6055, ¶ 35.

{¶ 11} Importantly, the addition of a new condition to a claim does not necessarily guarantee the payment of a new period of TTD compensation. *State ex rel. Ritzie v. Reece-*

*Campbell, Inc.*, 2015-Ohio-5224, ¶ 16. (Citations omitted.) As this court has previously observed, "newly allowed conditions constitute new and changed circumstances which *may* warrant the payment of a new period of TTD compensation *provided that* all other requirements for the payment of TTD compensation are met." (Emphasis in original.) *State ex rel. Wyrebaugh v. Indus. Comm.*, 2007-Ohio-1939, ¶ 37 (10th Dist.). Thus, even when a new condition is allowed in the claim, "the burden remains on the claimant to establish that the newly allowed conditions render claimant temporarily and totally disabled." *Id.*

{¶ 12} With the foregoing authority in mind, we next turn to relator's objections. In her first objection, relator contends the magistrate erred in finding that the commission did not abuse its discretion when it found there were no new and changed circumstances warranting reinstatement of TTD compensation commencing on September 22, 2023, the day following the last payment of TTD compensation in her claim, through May 1, 2024, and to continue. We disagree.

{¶ 13} The record shows relator last worked on or about October 8, 2021, received TTD compensation to replace her lost wages, and was found to have attained MMI on September 21, 2023, at which time her TTD compensation was terminated. (*See* Appended Mag.'s Decision.) Prior to the MMI date of September 21, 2023, relator received some treatment focused on her lower back that included both diagnostic testing and injections. *Id.*

{¶ 14} On January 18, 2024, the commission additionally allowed relator's claim for the condition of L-5 disc bulge. The record evinces that after the additionally allowed condition, there is no documented worsening or medical change that coincides with the requested TTD compensation onset date of September 22, 2023. *Id.* Instead, as the magistrate noted, this requested onset date appears to be simply the date following her last receipt of TTD compensation since being found MMI. *Id.* Nothing in the record shows any medical treatment coinciding with this date.

{¶ 15} Indeed, although relator did undergo injections after the claim became allowed for the L-5 disc bulge, she did not modify her alleged TTD compensation onset date, no provider found she was temporarily and totally disabled before or after the injection dates, and it was noted by realtor's medical providers that she derived no benefit from

either injection. *Id*. As the magistrate correctly observed, "a change in treatment alone does not support the conclusion that [relator]'s injury prevented a return to her former position of employment or that she did not remain at a treatment plateau" commencing September 22, 2023, or thereafter. *Id* at ¶ 54.

{¶ 16} Moreover, while relator's treating physician recorded on February 5, 2024 that relator's EMG was unremarkable and she would be considered for a spinal cord stimulator, there remained no findings to support a "change in condition or that relator had not reached a treatment plateau" as was previously found. *Id*. Thus, the magistrate properly concluded that there was no medical record substantiating any change in relator's level of physical functioning to demonstrate any worsening, and no indication that any treatment resulted in a change from her MMI treatment plateau. *Id*. While relator points to lumbar flexion and extension X-rays as new and changed circumstances, she has failed to substantiate that the X-rays documented a worsening or medical change to warrant TTD compensation.

{¶ 17} Accordingly, we overrule relator's first objection.

{¶ 18} In her second objection, relator asserts the magistrate erred in finding that the report of Dr. Yankush is "some evidence" to support denial of TTD compensation based on the newly allowed condition of bulging disc at L-5 commencing on September 22, 2023. (Aug. 12, 2025 Objs. to Mag.'s Decision at 3.) Again, we disagree.

{¶ 19} In this objection, relator asserts that Dr. Yankush's use of "boilerplate language" stating that he reviewed and accepted all findings of the examining physicians evinces that the magistrate erred in concluding Dr. Yankush's report was some evidence upon which the commission could rely to deny the requested period of TTD compensation. *Id*. But as the magistrate correctly pointed out, *Wallace* only requires that a medical reviewer accept the examining physician's *factual* findings—not necessarily the conclusions of the examining physicians. (Appended Mag.'s Decision at ¶ 58, citing *State ex rel. Wallace v. Indus. Comm.*, 57 Ohio St.2d 55, 59-60 (1979).)

{¶ 20} The magistrate correctly found that the *Wallace* standard was met, noting that "Dr. Yankush explicitly stated that he had 'reviewed all relevant medical reports within the file and has expressly accepted all of the findings of the examining physicians, but not necessarily the opinion drawn there from [and] I accept the objective findings of the

examining physicians in regard to the allowed conditions of this claim." *Id.* Contrary to relator's contention, this is all that *Wallace* requires. Dr. Yankush did not challenge the factual findings of any provider; rather, he accepted the factual findings but disagreed with their medical opinions, which he is permitted to do under *Wallace*.

{¶ 21} Moreover, it is well-settled that questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *Teece*, 68 Ohio St.2d 165. Therefore, regarding the denial of TTD compensation based on the newly allowed condition of bulging disc at L-5, the magistrate correctly found that Dr. Yankush's report was some evidence upon which the commission could properly rely, and relator has not demonstrated a clear legal right to the requested relief or that the commission was under a duty to provide it.

{¶ 22} Accordingly, we overrule relator's second objection.

{¶ 23} Based on the foregoing, we overrule relator's objections to the magistrate's decision. Having conducted an examination of the magistrate's decision and an independent review of the evidence pursuant to Civ.R. 53, we find the magistrate properly applied the relevant law to the salient facts in reaching the conclusion that relator is not entitled to a writ of mandamus. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein, and we deny relator's request for a writ of mandamus.

*Objections overruled*;
*writ of mandamus denied.*

MENTEL and EDELSTEIN, JJ., concur.

———————

# APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Alisa L. Williams, | : | |
| Relator, | : | |
| v. | : | No. 24AP-462 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

MAGISTRATE'S DECISION

Rendered on August 6, 2025

*Urban Co.*, *L.P.A.*, and *Anthony P. Christine*, for relator.

*Dave Yost*, Attorney General, and *Diane Burris*, for respondent Industrial Commission of Ohio.

IN MANDAMUS

{¶ 24} Relator, Alisa L. Williams ("claimant"), has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order that denied her request for temporary total disability ("TTD") compensation based on the newly allowed condition of bulging disc L5-S1.

Findings of Fact:

{¶ 25} 1. Claimant was injured on April 12, 2021, during the course of her employment with respondent Active Day Inc. ("employer"), and her claim was allowed for the following conditions: sprain of ligaments of cervical spine and sprain ligaments of

lumbar spine; herniated disc with radiculopathy C5-C6; and lumbosacral disc bulge L5-S1.

{¶ 26} 2. The claim was initially allowed for sprain of ligaments of cervical spine and sprain ligaments of lumbar spine. Subsequently, the claim was additionally allowed for herniated disc with radiculopathy C5-C6.

{¶ 27} 3. Claimant last worked on October 8, 2021, and received TTD compensation.

{¶ 28} 4. The Ohio Bureau of Workers' Compensation ("BWC") requested that claimant be examined for extent of disability. In an August 17, 2023, report, Howard A. Pinksy, D.O., issued a report, in which he found claimant had reached maximum medical improvement ("MMI") and could return to her former position of employment. Dr. Pinksy also noted the following: (1) an MRI scan of the lumbar spine from April 22, 2022, shows mild spondylosis at L5-S1; (2) claimant underwent a neurodiagnostic study on May 12, 2022, of her bilateral lower extremities; (3) claimant received a lumbar epidural steroid injection on March 1, 2022, which provided no relief; and (4) claimant received L4-L5 and L5-S1 diagnostic facet injections on December 6, 2022, which provided no relief.

{¶ 29} 5. On August 21, 2023, the BWC requested that TTD compensation be terminated based upon claimant having reached MMI and referred the matter to the commission.

{¶ 30} 6. On September 16, 2023, claimant underwent an MRI, which showed the following: (1) partial sacralization of the S1 vertebral body; (2) no evidence of acute fracture or facet dislocation; and (3) degenerative changes within the lumbar spine appear to encroach on the exiting L5 nerve roots bilaterally. She also underwent x-rays on that date, which showed moderate facet arthropathy at L3-L4, L4-L5, and L5-S1, with no evidence of fracture or malalignment.

{¶ 31} 7. In a November 1, 2023, report, Kene Ugokwe, M.D., issued a report, in which he found claimant had bilateral sciatica with some stenosis on her lumber MRI and recommended a flex-ex film to determine if surgery would be beneficial.

{¶ 32} 8. On November 2, 2023, the staff hearing officer ("SHO") found the following: (1) based on the August 17, 2023, report from Dr. Pinksy, the allowed conditions have reached MMI; (2) TTD compensation is terminated as of September 21,

2023, the date of the prior termination hearing; and (3) any overpayment since that date shall be recouped.

{¶ 33} 9. There is no evidence that claimant made any attempt to return to work or requested vocational rehabilitation.

{¶ 34} 10. On October 4, 2023, claimant requested that lumbosacral disc bulge L5-S1 be allowed.

{¶ 35} 11. On January 18, 2024, an SHO granted claimant's request that lumbosacral disc bulge L5-S1 be allowed.

{¶ 36} 12. On February 5, 2024, Andrew Hospodar, D.C., completed a MEDCO-14 Physician's Report of Work Ability, in which he certified TTD compensation from September 21, 2023, through May 1, 2024, based solely on the newly allowed condition of lumbosacral disc bulge L5-S1. He also completed a daily progress note on the same date, which indicated the following: (1) lower EMG was unremarkable; (2) low back pain is 9/10 in the lumbosacral region; (3) claimant is not a lumbar surgery candidate; (4) claimant will be considered for a spinal cord stimulator; and (5) claimant is using a cane.

{¶ 37} 13. On February 13, 2024, claimant filed a C-84 request for TTD compensation, which indicated that she last worked on October 8, 2021.

{¶ 38} 14. On February 13, 2024, claimant filed a C-86 motion, in which she requested that TTD compensation be reinstated from September 21, 2023, to May 1, 2024, to continue.

{¶ 39} 15. In a February 15, 2024, report, Thomas Yankush, D.C., reviewed the file on behalf of the BWC and found as follows: (1) there is insufficient medical evidence to support the requested TTD compensation from September 21, 2023, through May 1, 2024, and to continue, as it relates to the April 12, 2021, injury and claim allowance; (2) pain scores remain relatively high; (3) the September 5, 2023, MRI noted mild disc bulge; (4) March 7, 2023, electrodiagnostic testing demonstrated no evidence of neuropathy, myopathy, or lumbar radiculopathy; (5) claimant also had a lumbosacral transitional segment, which is a congenital anomaly and frequently associated with chronic back pain; and (6) TTD compensation is not substantiated to a direct and proximate result of the injury of record by way of causation, substantial aggravation, or flow-through.

{¶ 40} 16. A hearing was held before a District Hearing Officer ("DHO"), and in a March 22, 2024, order, the DHO found the following: (1) claimant's February 13, 2024, C-86 motion is denied; (2) claimant had not returned to work during the requested period of compensation, September 21, 2023, through March 18, 2024; (3) new and changed circumstances do not exist to substantiate claimant's request for TTD compensation subsequent to the prior finding of MMI, and the allowed lumbosacral disc bulge L5-S1 is not preventing claimant's return to the duties of her former position of employment; (4) Dr. Yankush's February 15, 2024, report is persuasive in its opinion that there is insufficient medical evidence to support TTD for the requested period; and (5) the order is based on Dr. Yankush's report; the September 16, 2023, lumbar MRI; and the March 7, 2023, EMG study. Claimant appealed.

{¶ 41} 17. On March 27, 2024, and April 17, 2024, claimant underwent two bilateral transforaminal lumbar ESIs at L5-S1.

{¶ 42} 18. In an April 22, 2024, letter, Dr. Hospodar indicated that claimant remained temporarily and totally disabled based on the allowed condition of lumbosacral disc bulge L5-S1 and is currently unable to return to work due to the condition. In his daily progress note of the same date, Dr. Hospodar noted that claimant had recently undergone two bilateral transforaminal lumbar ESIs at L5-S1 on March 27, 2024, and April 17, 2024, but she experienced no relief from the two injections.

{¶ 43} 19. The SHO held a hearing on claimant's appeal of the DHO order, and in a May 1, 2024, order, the SHO found the following: (1) claimant's request for TTD compensation from September 22, 2023, to the date requested is denied based upon claimant's having reached MMI as of September 21, 2023; (2) there is insufficient medical evidence indicating that claimant's condition has changed effective September 22, 2023, the date she is requesting reinstatement of TTD compensation; (3) the mere fact that the claim has been additionally allowed for the condition of lumbosacral disc bulge L5-S1 in and of itself does not demonstrate a change in claimant's disability status, noting that the only treatment received during the above indicated period is two lumbar transforaminal injections and a consultation with a spine specialist Dr. Ugokwe, who is only recommending that claimant utilize the use of spinal cord stimulator; and (4) the SHO finds more persuasive the findings from Dr. Yankush, per his February 15, 2024, report,

in which he found that after reviewing all medical documentation on file that there is no new and changed circumstances in claimant's status warranting the reinstatement of TTD compensation on September 22, 2023. Claimant appealed.

{¶ 44} 20. On May 22, 2024, the commission refused the appeal. Claimant filed a request for reconsideration, which the commission denied on June 12, 2024.

{¶ 45} 21. On July 29, 2024, claimant filed a petition for writ of mandamus, requesting that this court order the commission to vacate its order that denied her request for TTD compensation based on the newly allowed condition of bulging disc L5-S1.

Conclusions of Law and Discussion:

{¶ 46} The magistrate recommends this court deny claimant's writ of mandamus.

{¶ 47} In order for this court to issue a writ of mandamus, a relator must ordinarily show a clear legal right to the relief sought, a clear legal duty on the part of the respondent to provide such relief, and the lack of an adequate remedy in the ordinary course of law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).

{¶ 48} A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 49} TTD compensation awarded pursuant to R.C. 4123.56 is compensation for wages lost where a claimant's injury prevents a return to the former position of employment.

{¶ 50} "[T]he jurisdiction of the industrial commission and the authority of the administrator of workers' compensation over each case is continuing, and the commission may make such modification or change with respect to former findings of orders with respect thereto, as, in its opinion is justified." R.C. 4123.52(A). The commission may exercise its continuing jurisdiction if one of the following prerequisites is met: (1) new and

changed circumstances, (2) fraud, (3) clear mistake of fact, (4) clear mistake of law, or (5) error by an inferior tribunal. *State ex rel. Gobich v. Indus. Comm.*, 2004-Ohio-5990, ¶ 14.

{¶ 51} In *State ex rel. Prinkey v. Emerine's Towing, Inc.*, 2024-Ohio-5713, the Supreme Court of Ohio explained the meaning of "new and changed circumstances," as follows:

> When considering a subsequent application for PTD compensation, the threshold inquiry under R.C. 4123.58(G) is whether the claimant presented evidence of new and changed circumstances that developed since the initial denial of PTD compensation. R.C. 4123.58(G). The phrase "new and changed circumstances" is not defined under the statute, but it does have application elsewhere in workers' compensation law. See, e.g., R.C. 4123.57(A) (an application to increase the percentage of permanent-partial-disability ("PPD") compensation must be "supported by substantial evidence of new and changed circumstances developing since the time of the hearing on the original or last determination"); *State ex rel. Nicholls v. Indus. Comm.*, 81 Ohio St.3d 454, 459, 1998-Ohio 616, 692 N.E.2d 188 (1998) (one prerequisite to the commission's exercise of continuing jurisdiction under R.C. 4123.52 is the presence of "new and changed circumstances").
>
> Because workers' compensation cases are largely fact-specific, what constitutes "new and changed circumstances" is determined on a case-by-case basis. . . .

*Prinkey* at ¶ 21-22.

{¶ 52} In the present case, claimant presents two arguments. In her first argument, claimant contends that the commission abused its discretion when it denied her request to reinstate TTD compensation based upon the newly allowed condition of bulging disc L5-S1. Claimant points out that, prior to the bulging disc L5-S1 being added to the claim for treatment purposes, relator's treatment was focused on the cervical area and not the low back, including pain management solely for the cervical area; a January 3, 2023, C-9 request for therapy solely for the cervical area; a March 7, 2023, request for aquatherapy solely for the cervical area; and massotherapy on July 3, 2023, solely for the cervical area. Claimant further points out that the treatment rendered and requested prior to the allowance for the bulging disc L5-S1 was different than that after the allowance. Claimant

asserts that Dr. Pinsky's August 17, 2023, MMI examination concentrated on the cervical area, and he rendered no MMI opinion concerning the bulging disc L5-S1; yet, in denying TTD compensation, the commission relied upon Dr. Yankush's opinion, which relied heavily on Dr. Pinksy's opinion. The commission also relied upon the negative March 7, 2023, EMG test, which was irrelevant because the bulging disc was added on October 31, 2023, subsequent to the negative EMG test results. Claimant further contends that she underwent two bilateral transforaminal lumbar ESIs at L5-S1 on March 27, 2024, and April 17, 2024, and it is obvious and reasonable to assume she was temporarily disabled on at least those two surgical dates.

{¶ 53} The issue here is whether TTD compensation should be awarded based upon the newly allowed condition of bulging disc L5-S1, starting September 22, 2023, which was the day after TTD compensation was terminated based upon her having reached MMI. The gist of claimant's argument is that the medical evidence demonstrates that she began receiving low-back treatment after her claim was allowed for bulging disc L5-S1, whereas prior to the allowance for bulging disc L5-S1, treatment related to her cervical conditions. The magistrate disagrees. Initially, claimant presents no evidence or argument as to why TTD compensation should be recommended on September 22, 2023. The only significance of that date seems to be that her prior TTD compensation terminated the day before. There is no medical record that shows any medical change as of that date.

{¶ 54} Furthermore, although claimant points out that after the bulging disc L5-S1 was added to the claim for treatment purposes, and the focus of his treatment changed from his cervical area to her lower-back area, a change in treatment alone does not support the conclusion that claimant's injury prevented a return to her former position of employment or that she did not remain at a treatment plateau. Indeed, after the commission granted claimant's request that lumbosacral disc bulge L5-S1 be allowed on January 18, 2024, Dr. Hospodar indicated on February 5, 2024, in a daily progress note that a lower EMG was unremarkable and claimant will be considered for a spinal cord stimulator. These findings do not document any change in condition or that she had not reached a treatment plateau. Instead, the commission relied upon Dr. Yankush's February 15, 2024, report, in which he concluded that there was insufficient medical

evidence to support the requested TTD compensation; claimant's disc bulge was mild; there was no evidence of neuropathy, myopathy, or lumbar radiculopathy; and claimant's lumbosacral transitional segment is a congenital anomaly and frequently associated with chronic back pain. Dr. Yankush's report constitutes some evidence to support the commission's denial of TTD compensation.

{¶ 55} Furthermore, contrary to claimant's argument, claimant's testing and treatment was not solely focused on the cervical area prior to the allowance for the bulging disc at L5-S1. Dr. Pinksy noted that claimant underwent an MRI scan of the lumbar spine on April 22, 2022; she underwent a neurodiagnostic study on May 12, 2022, of her bilateral lower extremities; she received a lumbar epidural steroid injection on March 1, 2022, which provided no relief; and she received L4-L5 and L5-S1 diagnostic facet injections on December 6, 2022, which provided no relief. Thus, the record shows that claimant was receiving treatment and testing for her lumbar area before the condition of bulging disc L5-S1 was allowed.

{¶ 56} The commission also points out that, while claimant underwent two bilateral transforaminal lumbar ESIs at L5-S1 on March 27, 2024, and April 17, 2024, she did not modify her TTD compensation request dates, and no medical provider found she was temporarily and totally disabled during or after the dates of the injections. Importantly, Dr. Hospodar noted in his April 22, 2024, daily progress notes that neither of the two bilateral transforaminal lumbar ESIs at L5-S1 on March 27, 2024, and April 17, 2024, provided claimant any relief, lending support that claimant remained at a treatment plateau. Therefore, the magistrate finds there was some evidence to support the commission's denial of TTD compensation based upon the newly allowed condition of bulging disc L5-S1.

{¶ 57} Claimant's second argument is that the commission abused its discretion when it relied upon the medical review of Dr. Yankush, and considered it as some evidence to deny TTD compensation. Claimant first contends that although Dr. Yankush lists the allowed diagnoses concerning the claim, nowhere in his report does he accept the diagnosis of bulging disc L5-S1 as being caused by the accident. Claimant asserts that Dr. Yankush never expresses in his report that he accepts the bulging disc L5-S1 as being symptomatic due the industrial accident. Instead, he incorrectly opines that claimant's

low back pain is not due to the L5-S1 disc but is due to a congenital anomaly, and by not accepting the diagnosis and relying on a negative EMG test, Dr. Yankush is in violation of *State ex rel. Wallace v. Indus. Comm.*, 57 Ohio St.2d 55 (1979); *State ex rel. Richardson v. Quarto Mining Co.*, 73 Ohio St.3d 358 (1995). Claimant also asserts that Dr. Yankush calls the L5-S1 disc bulge "mild" to imply that the condition is not symptomatic, but the commission already took into consideration the negative EMG tests performed prior to the January 18, 2024, hearing.

{¶ 58} Claimant's arguments are unpersuasive. Dr. Yankush explicitly stated that he had "reviewed all relevant medical reports within the file and has expressly accepted all the findings of the examining physicians, but not necessarily the opinion drawn there from . . . I accept the objective findings of the examining physicians in regard to the allowed conditions of this claim." This is all that is required of *Wallace*. See *Wallace* at 59-60 (holding that a non-examining physician reviewing a file must accept the examining physician's factual findings, but can draw his own opinions therefrom). Clearly, Dr. Yankush accepted the diagnosis of bulging disc L5-S1 as being caused by the accident. That Dr. Yankush expresses an opinion that the disc bulge was mild and that there is a lack of evidence to show that claimant's low back pain is associated with his allowed claim is not a violation of *Wallace*. Dr. Yankush simply drew a different opinion than claimant's providers, and he supported his opinion citing the medical record before him, including the MRI, electrodiagnostic testing, and finding of the congenital lumbosacral transitional segment. Dr. Yankush does not challenge any of the factual findings found by any provider. Therefore, Dr. Yankush's report could constitute some evidence upon which the commission could rely.

{¶ 59} Accordingly, it is the magistrate's decision that this court should deny claimant's request for a writ of mandamus.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.